IN THE

# SUPREME COURT OF NEBRASKA.

## JANUARY TERM, A. D. 1890.

PRESENT:

HON. AMASA COBB, CHIEF JUSTICE.
" SAMUEL MAXWELL, } JUDGES.
" T. L. NORVAL,

FARMERS' LOAN & TRUST CO. v. SIMON MONTGOMERY ET AL.

[FILED JULY 2, 1890.]

1. **Evidence:** IMPEACHMENT OF WITNESS. John Bell on December 31, 1886, mortgaged a brown mare colt to Emma Moore, who assigned the mortgage to defendant Maxwell. Subsequently J. B. gave a bill of sale of the mare and other property to his son Thomas Bell, who mortgaged the same to the plaintiff. After this, defendant Montgomery, as constable, took possession of the mare from T. B. and turned it over to Maxwell on the first mortgage. The plaintiff replevied the mare from the two last named. On the trial of the right of possession, T. B. was called by plaintiff to identify the property, and Montgomery by the defense to impeach his evidence by relating his former statement to him, inconsistent with his present testimony. The plaintiff's objection to this examination was overruled by the

3          (33)

court, and the statement given to the jury. *Held*, That the admission of the statement was error, without having first interrogated the witness as to whether he had made such statement and calling his attention to the time, place, and circumstances of the same. (*Hooper v. Browning*, 19 Neb., 428; *R. V. R. Co. v. Linn*, 15 Id., 234; *George v. State*, 16 Id., 321; *Frederick v. Ballard*, Id., 565.)

2. Instructions: NOT BASED ON EVIDENCE. On the further trial, the court charged the jury that if they found from the evidence that the plaintiff had any actual knowledge, at the time of taking its mortgage on the brown mare in controversy, that she was included in the defendants' Emma Moore mortgage, they should find for the defendants. *Held*, That as there was no evidence to the jury tending to prove that either the plaintiff or any of its agents had any notice or personal knowledge of the existence of the defendants' mortgage it was reversible error in the court to submit the proposition to the jury. (*City of Crete v. Childs*, 11 Neb., 253; *Bowie v. Spaids*, 26 Id., 635; *Sloan v. Coburn*, Id., 607; *Dunbier v. Day*, 12 Id., 596; *Bradshaw v. State*, 17 Id., 147; *R. Co. v. Fink*, 18 Id., 89; *Ballard v. State*, 19 Id., 609.)

ERROR to the district court for Madison county. Tried below before POWERS, J.

*Wigton & Whitham*, for plaintiff in error.

*H. C. Brome*, and *Burt Mapes*, contra.

COBB, CH. J.

This action of replevin was tried in the district court of Madison county. The plaintiff in error was plaintiff below, and the defendants were defendants below.

The property described, in which the plaintiff claims a special property, and claims the right of possession, was "one iron gray mare about three years old," which plaintiff claimed by virtue of a chattel mortgage, executed by Thomas Bell, May 10, 1887, and which, it was alleged, was wrongfully detained by the defendants. Their answer was a general denial, but the defense made was that of a chattel mortgage executed by John Bell, the grantor of

Thomas Bell, to·Emma A. Moore, and by her assigned to R. H. Maxwell, and that defendant was the agent of Maxwell in the foreclosure of the last mentioned mortgage, executed December 31, 1886, and in which the mare in controversy was described as "one brown mare colt, two years old, valued at $100."

There was a trial to a jury, with a verdict and judgment for the defendant.

Upon bringing the case to this court on error the plaintiff assigns six substantial errors, which will be stated and considered in their order.

There were numerous witnesses examined on either side. The facts testified to by the witnesses on either side were generally consistent with the testimony of other witnesses of the same side, but were in sharp conflict with that of the other side. , The case turned upon the question whether the mare was properly described in the mortgage to Mrs. Moore, so that the record of her mortgage would be constructive notice to subsequent purchasers and mortgagees. The respect in which it was claimed that the description was insufficient for such purpose was as to color, and accordingly nearly all the testimony was directed to the color of the mare in question at the several stages of existence, from foal to that of the trial in the justice court at Battle Creek. All of the witnesses who had seen the mare a sucking colt agreed that she was then of a dark brown color. Some who had opportunities of observing testified that she "shed off" in the fall, others of equal opportunities testified that she did not "shed off" until the next spring; but all agreed that she did shed her coat, and when new hair came on she developed considerable white hair around her eyes, the root of mane and tail, and upon her flanks. It may be said to have been the concurrence of testimony that each time she shed her coat the new hair contained more white than the old, that her color was less brown, and approached nearer that of iron gray, gray

roan, gray brown, or strawberry roan. But nearly or quite all of defendants' witnesses who had seen the mare, at about the date of Mrs. Moore's mortgage testified that she was then " a brown mare," with a few white hairs upon different parts of her body. Many of the same witnesses also saw her at the time of the trial at the justice's court, and testified that she was then a brown mare.

On the other hand, many of the plaintiff's witnesses also saw the mare at and about the date of Mrs. Moore's mortgage, and were equally emphatic in their testimony that she was then an "iron gray mare."

There being, then, such a conflict of evidence upon the turning fact of the case, it was peculiarly a proper one for a jury to decide, and if it appears that no improper testimony was permitted to go before them, nor any erroneous or improper charge given them, their verdict must stand.

Upon the trial defendants called as a witness John Duncan, who testified that he resided in Madison county; that he was acquainted with John Bell in his lifetime, and resided about eighty rods distant from him; that he knew of Bell's having had in possession a brown mare colt two years old at that time; that he first saw the colt in the spring of 1885, about the time it was foaled; that he was sure it was foaled about that time; its color was brown; that he saw the same mare last spring, and then called her dark gray, or brownish gray, and saw her during the year 1886, and would then call her a brown with gray hairs around her eyes. Defendants' counsel put the following question: "State how this colt was generally described." Plaintiff's attorney objected to the question, as incompetent; that the mortgage was the best evidence of the description and color of the animal, and no foundation laid for the inquiry. The objection being overruled, exception was taken. The witness answered: "Well, the brown colt." The overruling of this objection and the witness's answer are assigned for error, and the assignment is well

taken.    The witness had already stated what he had called the color of the colt to be.    The inquiry was evidently intended to call out from him what others, the community, called the color of the animal; in other words, to prove the general reputation as to her color. This could only be done by calling persons of the community at large and interrogating them, and a large number was called for that purpose.    The testimony of each was proper evidence to the jury for what it was worth, but it was contrary to the rules of evidence to question either one as to what the others, or the community, said of the disputed color of the mare outside of the court.    By its ruling the court permitted hearsay evidence to go to the jury, which it is not necessary to characterize as unjustified and injudicious.

The defense called Simon Montgomery as a witness.    It appears from the bill of exceptions that the defendant Montgomery was a constable and had taken the animal in controversy in foreclosing the Moore mortgage, then owned by the defendant Maxwell, and had the mare in possession at the commencement of this suit, and hence was made joint defendant.    The witness testified in reply to the question, "State whether, at a short time after the taking of the mare in controversy, you had a talk with Thomas Bell in which he acknowledged to you that the mare was the one described as the small brown mare in the Moore mortgage."    The question was objected to by plaintiff, as incompetent and no foundation laid.    And the objection being overruled by the court, the witness answered: "I had such conversation."

Q. State what was said; did he say, at that time, that the mare was the one described in the Moore mortgage as the small brown mare?

The last objection was again made by the plaintiff and overruled by the court.

A. Yes, he did.

Q. State whether or not, a short time prior to this suit,

or to the trial, you had a conversation with Thomas Bell in which he asked you to release the little brown mare from the Moore mortgage, or to have Maxwell release it, and that he would supply you with another, a sorrel mare?

Objection made by plaintiff, as before, and overruled by the court.

A. I had that conversation with Bell; he asked me if I could have Maxwell release the mare, and he could get another sorrel mare that was described in the same Moore mortgage, and which we never got; that if we would release this mare that he would go with me where we could find that mare.

The plaintiff moved to strike out and exclude from the jury the last answer of the witness, as incompetent, not responsive, and improper mode of impeaching a witness, which was overruled.

This evidence was introduced ostensibly to contradict the witness, Thomas Bell, who had been called in rebuttal and examined by the plaintiff. On his cross-examination defendant's counsel asked, " Q. Did you not tell Simon Montgomery, shortly after he took the mare in controversy from yourself, that the mare that he took was the one described by John Bell, and known as the small brown mare?" To which was answered, "I did not." And the following, "Q. Within a month or so prior to the trial, did you not have a conversation with Robert Maxwell and Simon Montgomery, in which you acknowledged that the same mare here in controversy was the one that is described in the mortgage of Mrs. Moore as the small brown mare?" To which was answered, "No, sir." And the following, "Q. Did you not go to Maxwell and Montgomery and tell them that if they would release this mare from the Emma Moore mortgage that you would go and get another horse equally as good?" To which was answered, "I did not make any such statement."

Attention is called to the fact that it appears from the

bill of exceptions that the Emma Moore mortgage was executed by John Bell in his lifetime; that he afterwards executed a bill of sale to the animal in question, with other property, to Thomas Bell, who afterwards executed the mortgage under which the plaintiff claims title and possession; that, subsequently, during a period of sickness of Thomas Bell the property, including the animal in controversy, was taken from the Bell premises by Montgomery upon the Emma Moore mortgage, which had pre-previously been assigned to Maxwell.

Had the supposed conversation between the witness Bell and Montgomery occurred while Bell was in possession of the mortgaged property it is probable that any statement made by him as to the identity of the mare in question would have been admissible as evidence against his mortgagee, the plaintiff. But I deem it clear that any statement made by him after the property passed from his possession was inadmissible, immaterial, and not binding as against the plaintiff. Such being the case, while probably the defendant might be allowed to ask the questions of the witness, he was bound by his answer, and had not the right to call another witness to contradict his testimony. This point has been often decided in this court, following the law as laid down by Greenleaf, sec. 462, p. 561, especially in *Hooper v. Browning*, 19 Neb., 428; *R. V. R. Co. v. Linn*, 15 Id., 234; *George v. State*, 16 Id., 321 ; *Frederick v. Ballard*, 16 Id., 565, cited by counsel for plaintiff in error. The court, therefore, erred in overruling the objection of plaintiff to the questions put to the witness Montgomery for the purpose of contradicting the witness Bell.

Again, the defendant Maxwell being on the witness stand, on behalf of the defense, his counsel put to him questions in all respects similar to those put to his co-defendant Montgomery, as to the statements of the witness Bell. The same objection was made by the plaintiff as

made to Montgomery's answers, with the same ruling by the court, and a like answer by the witness as that of Montgomery. This, as we have seen, was cumulative error on the part of the court.

The plaintiff also assigns for error the giving by the court, of its own motion, the 6th and 7th paragraphs of instructions to the jury.

"6. If you find that the property in dispute is the same referred to and included in defendant Maxwell's mortgage, and the same was in said mortgage described sufficiently to enable a person to identify the property from such description, or from inquiry to be satisfied by such description, or, if you find that the plaintiff knew at the time of taking his mortgage that said property was included in defendant's mortgage, then you should find for the defendant.

"7. But if you believe from the evidence that said mare is not the one described and included in the defendant Maxwell's mortgage, or if you find that said property was so included but was not sufficiently described to enable the plaintiff at the time of taking his said mortgage to identify the property from the description of it contained in the mortgage, or from inquiries reasonably and naturally suggested by such description or mortgage, and that the plaintiff, at the time of taking his mortgage on said property, had no knowledge of the fact that defendants' mortgage included said property, then you should find for the plaintiff, provided you also find that said property was also included in the plaintiff's mortgage."

The objection by plaintiff to these instructions is that they submit the question to the jury whether the plaintiff had any actual knowledge, at the time of taking its mortgage on the mare in controversy, that she was included in the defendants' (or the Emma Moore) mortgage, and the jury were told that if the plaintiff had such knowledge they should find for the defendant. There certainly was

no evidence before the jury tending, in the least, to prove that the plaintiff, or any of its agents, had any personal knowledge on the subject.

On the trial the plaintiff called J. E. Simpson, who testified that he had transacted the entire business between the Farmers' Loan & Trust Company and Thomas Bell, in regard to the mare in controversy, and that no other agent of the company had anything to do with it.

" Q. State whether you had any knowledge or information that the mare in controversy was included in any other mortgage except the Hughes' mortgage." This question was objected to by defendants, as incompetent, irrelevant, and immaterial, and the objection was sustained by the court. The following question was then put to the witness: " Q. Was there anything ever said in your hearing about said animal being included in the Emma Moore mortgage, at any time?" This question was also objected to by defendants, as before, and the objection sustained by the court.

The objections to this testimony were doubtless sustained upon the ground that it was immaterial and unnecessary for the plaintiff to disprove knowledge on its part of the facts involved in the question, for the reason that there was no evidence tending to prove such knowledge, and upon this ground the evidence was rightly rejected. But I think it was error on the part of the court, after excluding the testimony, to submit to the jury the identical proposition to which the overruled evidence was applicable.

It has been held by this court in the cases cited by counsel for plaintiff in error, *City of Crete v. Childs*, 11 Neb., 253; *Bowie v. Spaids*, 26 Id. 635; *Sloan v. Coburn*, Id., 607; also in *Dunbier v. Day*, 12 Neb., 596; *Bradshaw v. State*, 17 Id., 147; *Railroad Co. v. Fink*, 18 Id., 89; *Ballard v. State*, 19 Id., 609, and *Marion v. State*, 20 Id., 246, that instructions to the jury must be based upon the evidence, and that if an instruction assumes the possible

Hale v. Hess.

existence of a state of facts which the jury have no right to find, there being no evidence, it is error. I see no escape from the application of this rule, so often laid down, to the case at bar.

It is not deemed important to further consider the assignments of error in the case.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.