## D. F. LA BONTY V. C. P. LUNDGREN.

[FILED FEBRUARY 24, 1891.]

**Witnesses:** CREDIBILITY: AN INSTRUCTION "that the testimony of one creditable witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all the facts before you that such other witnesses have knowingly testified untruthfully, and are not corroborated by other creditable witnesses, or by circumstances proved in the case," *held*, not applicable to the testimony and cause for reversal.

ERROR to the district court for Cuming county. Tried below before POWERS, J.

*Griggs & Rinaker, J. C. Crawford,* and *J. A. Smith,* for plaintiff in error, cited, as to the instruction: *State v. Stout,* 31 Mo., 406; *State v. Cushing,* 29 Id., 215; *State v. McDavitt,* 69 Ia., 549.

*T. M. Franse, contra,* cited on the same point: Sackett, Instructions [2d Ed.], sec. 3; *Green v. Janey,* 4 Com. Law, 524; *Rudolph v. Lane,* 57 Ind., 115; *Bierbach v. Goodyear,* 54 Wis., 208.

MAXWELL, J.

This is an action of ejectment to recover the possession of 160 acres of land in Cuming county, and for the rents and profits thereof for four years. The answer is a general denial and an estoppel *in pais.* On the trial of the cause the jury found generally in favor of the defendant, and also specially as to certain facts submitted to them. A motion for a new trial was thereupon filed and overruled and judgment entered on the verdict.

The testimony shows that the land in controversy was entered by one Charles Bartholomew, the patent being is-

sued November 2, 1868. Bartholomew conveyed to the plaintiff. On the 2d day of December, 1880, a deed for the land in controversy was executed in the name of D. F. La Bounty, the witnesses being W. McFadden and J. H. Miller, and the acknowledgment taken before Chas. I. Siep, a notary public, of Rockford, Pennington county, Dakota. In the year following, one L. B. Baker having a tax claim on said land, made a quitclaim to D. F. La Bounte and soon afterwards La Bounte made a quitclaim deed of said land to John Kerkow. This conveyance was acknowledged before Charles I. Siep and witnessed by O. R. Jpsen and W. W. Smithson.

The defendant claims title by conveyances from John Kerkow. On behalf of the plaintiff it is alleged and considerable testimony introduced tending to show that the deeds in question signed D. F. La Bounty and D. F. La Bounte are forgeries and were not executed by plaintiff.

Upon this point the plaintiff himself testifies that he did not execute the deeds in question and knew nothing of their execution until shortly before the bringing of this action.

Siep, before whom the acknowledgments were taken, testifies:

The deeds were executed by a man who signed his name "D. F. La Bonte," one of the deeds being made in December, 1880, the other in January following. The first of said deeds was a warranty one, the other was a quitclaim; I think the warranty deed was made December 2, 1880. Both were of lands in Cuming county, Nebraska. The man who signed the warranty deed is the same identical person who afterwards signed the quitclaim deed. The man who signed both deeds was a small man, about five feet five or six inches tall, would weigh about from 145 to 150 pounds. At the time of the acknowledgment I should judge him to be forty-five or fifty years old; the fingers were off his right hand; as near as I can reccollect he held his pen between his thumb and the stub of

his hand.   The first I knew of this man who signed the deeds was in 1876, he was then at what is now called Pactota, in this county.   He was prospecting at that time. He staid there until, I think, September, 1876, and I think, went away with Crook's soldiers.   The next time I saw him, I think, was in 1880, at Rockford in this county. He was mining and prospecting in the vicinity of Rockford.   I saw him in 1880 and 1881, and in Deadwood in 1881.   I saw him in Rapid City afterwards in 1881 or 1882, then I saw him off and on from then until 1886, the last time being in 1886 in Rapid City.   All the times I have seen him he was in Pennington county, except the time I saw him in Deadwood.   Since I have known him he has been prospecting, mining, and freighting.   The freighting that I know of, being from Buffalo Gap to Deadwood.   I have learned that he now lives near Buffalo Gap, Custer county.   The names that I knew him by were "Frenchy" and "La Bonty," "La Bounty" and "La Bonte."   I never knew his first name.   He came, I think it was in 1880, with pension papers for me to sign as notary public ; he brought like papers for me to sign as notary public afterwards and up as late as in 1885 ; those papers he signed as Amos La Bonty or Amos La Bounty, I am not certain now how he spelled the last name.   The man who signed the two deeds, one in December, 1880, and the other in January following, and which I have referred to above, and also in my deposition of January 30th last, is now known as Amos La Bounty.   At the time I took the acknowledgments to those deeds I did not know his first name, and required him to be identified, and a man by the name of F. W. Vonbodinger came with him and told me his name was D. F. La Bonte ; that he had known him in West Point, Cuming county, Nebraska, and that he was the right man.   About this same time I had taken his acknowledgment to the pension papers as Amos La Bounty or Amos La Bonty, and I then so knew him ; but after

Mr. Vonbodinger assured me that his name or initials was or were "D. F.," I supposed he had enlisted in the army by the assumed name of "Amos" and that his real name was as stated to me by Mr. Vonbodinger and other information. The man who signed the deeds is still known as Amos La Bonty or La Bounty. I think he enlisted in 1876, and at that time the fingers were not cut off his right hand. I do not now know what his Christian name actually is. This man, Amos La Bounty, is well known in Pennington county, and was in 1880.

Q. State whether or not you have to-day been introduced to a man whose name was given to you as "Daniel F. La Bonty," the plaintiff in this case; if so, by whom.

A. I have; by Mr. N. K. Griggs.

Q. State whether or not the man so introduced to you by Mr. Griggs as Daniel F. La Bonty, plaintiff, is the same man who signed the two deeds acknowledged to you, one in December, 1880, the other in January, 1881; if not, state fully how the man introduced to you to-day by Mr. Griggs differs from the man who signed the deeds in question, the acknowledgment of which was taken by you.

A. He is not the same man by any means. The man introduced to me to-day as Daniel F. La Bonty is older, stouter, and much heavier than the one who signed the deeds. The one introduced to me to-day has no fingers cut off and both his hands are perfect; the two men are entirely different in every respect, except they are about the same height. I do not think I ever saw the gentleman introduced to me to-day by Mr. Griggs until to-day, etc.

One Smithson, a witness on one of the deeds, also testifies to substantially the same facts.

The court instructed the jury as follows: ·

"The jury are instructed that the testimony of one creditable witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evi-

La Bonty v. Lundgren.

idence and all the facts before you that such witnesses have knowingly testified untruthfully and are not corroborated by other creditable witnesses, or by circumstances proved in the case."

This instruction was not warranted by the evidence. The testimony before the jury of two witnesses to the deeds and of the notary public before whom the acknowledgments were taken was that the person who had executed the deed in the name of D. F. La Bounty was in fact Amos La Bounty, and not the plaintiff; that he was a small man, weighing from 145 to 150 pounds and from forty-five to fifty years of age, while the plaintiff is an old man nearly eighty years of age, also that he is a much larger man than Amos La Bounty and weighs about 200 pounds. Upon these points there is substantially no controversy in the testimony.

The creditability of the witnesses is a question for the jury, but the question of creditability should be fairly submitted. To point out one or two witnesses whose testimony may be criticised or discarded is wholly unwarranted, unless there is something in the evidence peculiarly affecting their character as witnesses. A jury is not at liberty, arbitrarily and without cause, to discard the testimony of a witness, and an instruction which, without evidence, authorizes them so to do cannot fail to be prejudicial. As there must be a new trial we will express no opinion upon the facts.

It is apparent that there is other testimony within reach of the parties which will tend to sustain or defeat the plaintiff's title.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.