A. W. McCREADY v. THOMAS J. PHILLIPS.

FILED APRIL 16, 1895. No. 6162.

1. **Instructions:** ISSUES. An instruction in which the court states to the jury the issues in the cause should not contain a statement of material matter not pleaded as being of the questions litigated.

2. ———: ———. An instruction by which the jury are informed that they may base their finding and verdict upon something not put in issue by the pleadings, is erroneous, and if calculated to mislead the jury, or prejudicial to the rights of a litigant, will be sufficient to work a reversal.

3. **False Representations:** DECEIT: DAMAGES: BURDEN OF PROOF. In an action to recover damages for alleged false representations or fraud and deceit practiced upon plaintiff, by reason of which it is claimed he was induced to part with property (in this case a farm) at a price greatly below its real value and thus damaged, it devolves upon the party pleading the fraud and deceit to show that he was influenced by the deceit and thereby induced to make such disposal of his property.

4. **Conversion:** MEASURE OF DAMAGES. Where personal property, including live stock, is left with a party to be cared for, fed, and sold, and after deducting expenses the proceeds to be delivered to the owner of the property, and after disposing of it the party with whom such property was left appropriated the proceeds to his own use, in an action against him to recover for the conversion, the measure of damages would be the amount of such proceeds.

ERROR from the district court of Lancaster county. Tried below before HASTINGS, J.

*Marquett, Deweese & Hall,* for plaintiff in error:

A party to a contract who has facilities and opportunities for examining and ascertaining the true state of affairs, has no right to rely upon the representations of the other party. (*Parker v. Moulton,* 114 Mass., 99; *Mooney v. Miller,* 102 Mass., 217; *Poland v. Brownell,* 131 Mass., 138.)

To avoid a contract on the ground of false representations it must be shown that the representations were relied upon, and that damage resulted. (*Stout v. Merrill,* 35 Ia., 47; *Stafford v. Maus,* 38 Ia., 133; 1 Story, Equity Jurisprudence, secs. 195, 197; *Phillips v. Duke of Bucks,* 1 Vern. [Eng.], 227; *Dawson v. Graham,* 48 Ia., 378; *Gee v. Moss,* 68 Ia., 318; *Abbott v. Abbott,* 18 Neb., 505.)

*Cornish & Lamb, contra,* cited : *Converse v. Meyer,* 14 Neb., 192; *Porter v. Fletcher,* 25 Minn., 493; *Olson v. Orton,* 28 Minn., 36; *Nolte v. Reichelm,* 96 Ill., 425; *Morgan v. Dinges,* 23 Neb., 271; *Thomas v. Beebe,* 25 N. Y., 244.

HARRISON, J.

The defendant in error (hereinafter referred to as plaintiff) commenced an action in the district court of Lancaster county to recover of the plaintiff in error (hereinafter designated as defendant) the sum of $5,500 and some interest thereon, stating in his petition two causes of action, as follows :

"The plaintiff for cause of action states that on the —— day of February, 1887, the plaintiff was the owner and in the possession of the following described property, to-wit : Twenty head of calves, ten head of milch cows, one yearling bull, one span of mules, four mares, from seven to ten years old, twenty head hogs, two lumber wagons, three sets double harness, one self-rake reaper, two riding plows, one harrow, four hundred bushels oats, fifty bushels wheat, one

cook stove, one cupboard, one flour chest, one horse rake, one mowing machine, in the value of twenty-five hundred ($2500) dollars; that on the said date the defendants, without the consent of this plaintiff, unlawfully converted said property to their own use, to the damage of this plaintiff in the sum of twenty-five hundred ($2500) dollars.

"For the second cause of action plaintiff alleges that on or about the first day of December, 1886, the plaintiff was the owner and in the possession of the following described property, to-wit: The east one-half ($\frac{1}{2}$) of section twenty-five (25), township twelve (12) north, range four (4) east, Seward county, state of Nebraska; that on and subsequent to that date and up to and including the —— day of February, 1887, the plaintiff resided in Lake county, Dakota, a long distance removed from said land; that on or about the 1st day of December, 1886, the plaintiff employed the defendant A. W. McCready to go to Seward, Seward county, state of Nebraska, to investigate the incumbrance upon said land and report to plaintiff the result of said investigation; that the said A. W. McCready, in pursuance with said employment, went to Seward county, state of Nebraska, for the purpose of making said investigation, and thereafter returned to Lake county, Dakota, and falsely and fraudulently represented to this plaintiff that a judgment was rendered against plaintiff, to-wit, in the sum of eight hundred ($800) dollars, and that the same was a lien upon said land, and that the holders of the mortgages of twenty-three hundred ($2300) dollars had commenced foreclosure proceedings against said land, and thereafter, to-wit, on the —— day of February, 1887, the said defendants A. W. McCready and Sarah A. McCready renewed said representations to this plaintiff and stated to this plaintiff unless he sold said land that the same would be taken under the foreclosure proceedings, and that the plaintiff would realize nothing from the sale of said real estate, and thereupon the said defendants A. W. McCready and Sarah Mc-

Cready urged this plaintiff to dispose of said real estate to said defendants, and by reasons of said false representations and relying upon the same this plaintiff was induced to part with said real estate and dispose of the same to the defendant Sarah A. McCready; that said representations were false in every particular, and in truth and in fact no foreclosure proceedings had been commenced upon said mortgages, and said judgment would in truth and in fact not exceed the sum of five hundred ($500) dollars, and no measures had been taken to enforce said judgment against said real estate, and that said real estate was reasonably worth, up to said date, the sum of sixty-five hundred ($6500) dollars, and the said defendants, by means of said representations, induced the plaintiff to sell the same to defendant Sarah A. McCready for about the sum of thirty-five hundred ($3500) dollars, whereby the plaintiff was damaged in the sum of three thousand ($3,000) dollars; that the said Sarah A. McCready and A. W. McCready were and are wife and husband.

"By reasons of the causes of actions heretofore set forth, plaintiff asks judgment in his favor and against defendants for the sum of fifty-five hundred ($5500) dollars and interest thereon at the rate of seven (7) per cent per annum from the —— day of February, 1887, and costs of this action."

It appears that no service was obtained upon Sarah A. McCready.  A. W. McCready filed the following answer:

"Now comes A. W. McCready, one of the defendants herein, and for his separate answer admits that the plaintiff was at one time the owner and in possession of the personal property described in plaintiff's petition, and further alleges that on the 25th day of February, 1887, said Thomas L. Phillips and his wife, Sarah Phillips, gave to this defendant a power of attorney in writing, by which this defendant was authorized, instructed, and empowered to sell and dispose of all the personal property described in plaintiff's first cause of action for and on behalf of said plaintiff,

in which said power of attorney this defendant was authorized and empowered to do the best he could in connection with the sale and disposition of said property, and said plaintiff agreed that he would find no fault whatever nor make any objections to anything that defendant might do in connection with said property and that the plaintiff would consider that said defendant had done the very best that could be done in connection with the sale and disposition of said property.

"This defendant further says that he sold said property under and by virtue of said power of attorney for the best possible price that he could obtain and on the most favorable terms for the sum of $1,190.

"Defendant further answering says that the proceeds arising from said sale were to be applied as far as they would go to the payment of three promissory notes of $500 each, and on the $602 note, all of which were executed and delivered by the said Thomas L. Phillips to this defendant and the proceeds arising from said sale were thus applied, leaving a balance still due and owing from the plaintiff to this defendant of $912, together with interest thereon, no part of which has been paid, but all of which is long past due.

"Defendant, in answer to the second cause of action in plaintiff's petition, says that he admits that plaintiff was the owner of the east half of section 25, township 12 north, of range 4 east, Seward county, Nebraska, and that he sold the same to said defendant, and that she paid to the plaintiff the purchase price of said land in full, and that all questions of every kind touching the sale and deeding of said property was had between said defendant and the plaintiff on the 23d day of December, 1886, and on said date defendant paid to the plaintiff as the balance of the purchase price of said real estate, and it was agreed that said defendant should assume six mortgages on said real estate of $2,700, together with the taxes of $111; also the interest on said mortgages from September 1, 1885.

"Defendant further answering denies each and every other allegation in said petition contained not hereinbefore specifically admitted.

"Defendant for the purpose of obtaining affirmative relief files his counter-claim or cross-bill and says that on the 23d day of December, 1886, that being the time on which the plaintiff and the defendant had a full and final settlement, the said plaintiff and his wife, Sarah Phillips, executed and delivered to Mrs. Sarah A. McCready their three promissory notes of $500 each, payable as follows, to-wit: The first one on the 1st day of October, 1887, with interest at the rate of ten per cent per annum from date; the second one, for $500, on the 1st day of October, 1888, with interest at the rate of ten per cent per annum from date; and the third one, of $500, on the 1st day of October, 1889, with interest at the rate of ten per cent per annum from date; that on the 25th day of February, 1887, the said Thomas L. Phillips executed and delivered to Sarah A. McCready, defendant herein, his promissory note in writing for $602, which was due and payable on the 1st day of January, 1888, with interest at the rate of ten per cent per annum from date; that this defendant is now the owner and holder of the three $500 notes given by said plaintiff and his wife to the said Sarah A. McCready, having purchased the same in due course of business before maturity; that all of said notes are long past due and the plaintiff has not paid the same, or any part thereof, except the sum of $1,190; that there is still due and owing to this defendant from said plaintiffs upon said promissory notes the sum of $912, together with interest from date at the rate of ten per cent per annum, for which amount this defendant prays judgment against said plaintiff.

"Wherefore this defendant prays that plaintiff's petition may be dismissed and that this defendant may recover a judgment against the plaintiff for $912 and interest and costs."

To which reply was made as follows:

" For reply to defendant's answer herein plaintiff denies the allegations therein contained, or if plaintiff did sign the power of attorney described in said answer, his signature was procured through the fraud and the false representations of said defendant. Plaintiff believes that he did not sign said instrument, and denies as aforesaid the other allegations in said answer contained."

There was a trial of the issues before the court and a jury, which resulted in a verdict and judgment in favor of the defendant in this court in the sum of $2,801.05, and to secure a review of the proceedings during the trial in the district court the defendant has brought the case to this court.

One assignment of error urged by counsel for defendant is: "The court erred in refusing to grant to the plaintiff herein a new trial for newly discovered evidence material to the plaintiff, as shown by the affidavits of C. L. Graves, Ed. Graves, and others submitted herewith, which evidence the plaintiff herein was unable after reasonable diligence to discover and produce on the trial." It will be noticed that this assignment refers to certain affidavits as submitted in support of the application for new trial on the ground of newly discovered evidence, and counsel in their brief quote from the statements contained in the affidavits, but we have been unable to discover these papers in any portion of the record filed in this court and must conclude that they were not made a part of it by being incorporated in the bill of exceptions, and not having the evidence before us which was considered by the district court. in passing upon this portion of the motion, we cannot determine the correctness of its ruling thereon, and the presumption being in favor of its correctness, in the absence of anything tending to show to the contrary, it must be affirmed.

The first and second points which are argued in the brief

of counsel for defendant refer to alleged errors of the trial court in the instructions 1 and $7\frac{1}{4}$, given to the jury, and may be considered together.   The portion of the first instruction, which was a summarized statement of the cause of action set forth in the petition, of which the defendant complains is as follows: "That defendant McCready, having been employed by the plaintiff to examine into the condition of 320 acres of land in Seward county, Nebraska, falsely and fraudulently represented that a judgment for $800 had been taken against the plaintiff and execution thereon levied upon said land;" and number $7\frac{1}{4}$, which it appears was number 4 of instructions requested for defendant in error, but designated by the court in regular order of instructions given as $7\frac{1}{4}$, read as follows: "If you find from the evidence that the defendant McCready falsely and fraudulently represented to the said plaintiff the mortgages upon said land in controversy were being fore-closed; that there was a judgment against the said plaintiff for $800, which was a lien upon said land, and upon which judgment execution had been issued and levied upon the land and the same was about to be sold, and the said defendant made such representations falsely and fraudulently with the intention of inducing plaintiff to make a contract of sale for said described property, and the said plaintiff, reposing faith and confidence in the said defendant, relied upon such representations and did make the trade of said land, and in that event you are instructed that the defendant in making the representations as aforesaid is liable in this action for the fraud and deceit so practiced and would be liable to the plaintiff for any injury he may have received thereby."   Counsel for defendant contend that it was error on the part of the court to inform the jury that there was any question of false representations on the part of the defendant in relation to an execution having been issued and levied upon the plaintiff's land, included in the issues presented in the case for their consideration, inas-

much as no allegation of any such representation appeared in the petition, and for the same reason it was error and prejudicial to defendant's rights to instruct the jury on this same subject as the court did in instruction No. $7\frac{1}{4}$, hereinbefore quoted, that as an element upon which a finding and verdict for plaintiff might be based, was the false statement of defendant that execution had been issued upon the judgment, levied on the land, and a sale of it about to be made, if shown by the evidence. It will be remembered, or a reference to the allegations of the petition herein quoted will disclose, that there is no statement in the pleadings of any representations by defendant in regard to an execution or any active measures instituted for the enforcement of the judgment; all that was claimed to have been said was that a judgment had been rendered in the sum of $800, and that the same was a lien upon the land. Counsel for plaintiff say that the fact of an execution and levy must have been in the pleader's mind; it is stated by implication. It is doubtless true that it may have been and was in his mind, but counsel might have further said that, following the usual and ordinary course of procedure or practice, it should not have been allowed to remain stored in the mind, but should have been written in and made part of the allegations or statements of the causes of action in the petition if it was desired to present it for the consideration of the court and jury. It will scarcely suffice, we think, to rely upon implication to supply a statement of such a material portion of a pleading in an action as this would have been in the case at bar. Furthermore, it appears from the testimony that the plaintiff had full knowledge in relation to this judgment, except as to its exact amount, which was about $500 instead of $800, the amount alleged to have been represented by defendant. Inasmuch as it was not pleaded that the defendant had falsely represented that an execution had been issued to enforce the judgment and levied

upon the land, and the same was about to be sold, it was error for the court to instruct the jury that this constituted one of the issues of the trial; and further, that if the evidence disclosed that such representation had been made by defendant and its falsity, etc., it might be made a constituent of a basis for a finding in favor of plaintiff. But it is urged that notwithstanding it was an erroneous action of the court to thus charge the jury in reference to matters which were not of the issues of the action, yet, since the portion of the instruction which was objectionable was not alone the subject of the instructions, but was in each of them, No. 1 and No. 7¼, combined with the further element of fraud and deceit, viz., an alleged false representation of defendant in regard to the foreclosure of the mortgages, and the two as a whole stated to be of the issues and for the examination and determination of the jury, if, eliminating the objectionable portion from the charge of the court there remained sufficient, if proved and believed by the jury, upon which to predicate a finding and verdict for the plaintiff as to this branch of the case, then the error in the charge was not prejudicial. It is a rule, which we believe is sustained by both precedent and reason, that in cases where fraud and deceit are the basis of a prayer for relief, the court will not measure with particularity to ascertain what portion of the alleged fraud and deceit has been established, or as to what effect it should have exercised upon the parties upon whom it was practiced, but the issue will be, was any portion of it used as alleged and for the purpose stated, and was it sufficient to effect the purpose? Did it in such a case as the one under consideration excite the complaining parties and cause such fear and apprehension in their minds of a loss of their property as to induce them to dispose of it to the party making the representations at a sacrifice, or far below its real value and on terms and conditions disadvantageous to them and to the advan-

tage of the other party? If so, relief will be granted. (See Bigelow, Fraud, 88, 89, and cases cited; Kerr, Fraud & Mistake, 75.)

A question which it seems proper to consider at this time is, did the representations, if proved to have been made by defendant and to have been false in relation to the foreclosure of the mortgages, so operate upon and influence the minds of plaintiff and his wife in causing them to fear the loss of the farm as to induce them to part with and convey it to defendant or some one designated by him, for such a reduced consideration as compared with its value as to constitute it a fraud upon their rights in the premises. To determine this we turn to the testimony of the plaintiff and his wife. He stated that the land was worth $20 per acre, or the whole farm of 320 acres $6,400, and a number of times he said he wanted $6,000 for it, and in stating, during cross-examination, his understanding of the sale to defendant, testified as follows:

Q. Now is not this a fact, that when you purchased this $3,000 worth of personal property from McCready, you gave him your notes for $3,000 and you also gave him a deed to your farm, and you told him that the incumbrance on the farm was $2,300, and he was to give you credit upon this $3,000 that you owed him for the puchase price of the farm after deducting the $2,300 incumbrance.

A. No, sir; that was not the transaction.

Q. How do you know?

A. There was nothing said about that.

Q. How did you happen to fix the consideration? What was the consideration you gave him in that deed at that time?

A. Six thousand dollars.

Q. How much was the consideration for the farm when you sold it to him the last time or second time?

A. He gave me so much for it.

Q. Well, how much? Four thousand five hundred dollars, was it not?

A. He gave me the stock and $800, and assumed all the mortgages.

Q. He gave you the stock and $800, and assumed all the mortgages?

A. Yes, sir; he took out the horses and some other things, I do not recollect; that was assigned to S. A. McCready, the same stock.

Q. That is, you turned back part of the stock?

A. Yes, sir; I did not have any use for it.

Q. You turned back stock, the difference between $2,300 and $3,000.

A. I cannot just tell how much I turned back.

Q. You are not very clear on that transaction, are you? Do you remember pretty distinctly the whole transaction?

A. Yes, sir; I do.

*       *       *       *       *       *       *

Q. How much were you to get for this farm when you made this final deed?

A. Two thousand four hundred dollars worth of cattle and stock and $879 in money.

Q. That was the full consideration for the place, was it?

A. Yes, sir.

Q. That was your understanding of the transaction, was it?

A. Yes, sir.

And during the redirect examination:

Q. In the final sale of the place, the farm for $2,400 worth of stock and $879 in money, what was done with the incumbrance,—the mortgages and judgments upon the land?

Objected to; that this has all been gone over and it is not proper redirect examination. Overruled. Exception.

A. He assumed the $2,300 and the judgments. He claimed the mortgages to be $2,700.

Q. He assumed that and agreed to pay that?

A. Yes, sir.

55

Q. And that made up a part of the consideration?

A. Yes, sir.

And again during recross-examination:

Q. Now tell the jury how much he was to give you for the land and the manner in which it was to be paid. Tell the jury how much you sold the farm for.

A. As I said before, I would not take less than $6,000 for it.

Q. How much did Mr. McCready agree to pay you for it?

A. He was to give me $2,400 worth of stock and $800 in money and assume the indebtedness.

Q. How much was the indebtedness?

· A. There was a $500 judgment, $507 is what the record shows, and there was $2,300 in three mortgages, one of $800, one of $1,000 and one of $500, and there was taxes of $35, and he claimed there was another tax of about $70 for the next year, the year following.

Q. So the agreement between you and Mr. McCready at that time was, that you were to have $6,000 for the farm?

A. That is what I wanted for it.

Q. Was that the agreement?

A. I understood it so.

Q. Will you answer my question—was the agreement between you and Mr. McCready that you should have $6,000 for your farm, that he was to give you $2,400 in cattle, $870 in money, and he was to pay off the incumbrance? Was that the agreement between you and Mr. McCready?

A. Yes, sir; that is the way I understood it.

Q. That is the way you understood it?

· A. Yes, sir.

Mrs. Phillips, wife of plaintiff, testifies on this subject, during direct examination, as follows:

Q. What did Mr. McCready say about your farm?

A. Mr. Phillips did not do much talking. My husband never done much talking. Mr. McCready done the talking. We let him do the talking—what talking there was done. He explained how the place was to be sold under the mortgage on it. What there was upon the place was to be foreclosed; that we were back so much; that he was to give $878 and we were to have the cattle and he was to assume the indebtedness against the place and we were to have the stock and $878 difference in money.

Q. What stock do you mean?

A. We were to have the cattle and horses.

During cross-examination she states:

Q. Now you say at that time that this conversation you have been speaking about took place that you sold your farm for $6,000.

A. Yes, sir.

Q. And that he was to pay $2,400 in stock?

A. Yes, sir.

Q. And $878 in money?

A. Yes, sir.

Q. And he was to assume the incumbrance upon the place?

A. Yes, sir; that is the way I understood it.

These statements of the plaintiff and his wife show that at the time he sold his land, the contract for it, as they understood it and made it, gave them for it as much as the plaintiff asked for it, and any representations made by defendant did not influence them, according to their own statements or version of the affair, to dispose of the land at a sacrifice. From any view of the plaintiff's case as presented by the petition and testimony, we must conclude that the instruction numbered 7¼ was not applicable to the issues or evidence and should not have been given; and further, that there was no testimony to sustain a finding that the mind of plaintiff had been so operated upon by false representations of defendant as to induce him to sell his

farm for a price far below its value, or even less than what he considered it worth, or wanted for it.

Another branch of plaintiff's action was the alleged conversion by defendant of personal property of the value of twenty-five hundred dollars. The evidence discloses that the plaintiff had been living in Dakota with the defendant, or on his farm, and a large portion of this personal property which it is stated the defendant converted consisted of the stock which was sold by defendant to plaintiff, or, as it will be remembered the plaintiff and his wife testified, became theirs as a part of the consideration for the sale of their farm to defendant. During the month of February, 1887, the plaintiff removed with his family from Dakota to Omaha, Nebraska, and it was agreed that defendant should care for this personal property, make a sale of it, and, the plaintiff says, send the proceeds to him at Omaha. Defendant claims that the proceeds were to be applied on some notes which he then held and which he further claims evidenced an indebtedness of the plaintiff to him arising out of the land and stock deal which are the subjects of the whole controversy in this action. The court, at the request of plaintiff, instructed the jury as follows on this part of the case:

"You are instructed that if you find from the evidence that the said plaintiff was the owner of the chattel property described in plaintiff's petition, having purchased the same from the defendant McCready, and that the said plaintiff left the said property in the possession and under the care and control of the said defendant with an understanding and agreement with the said defendant McCready that he should sell and dispose of the same and remit the proceeds thereof to this plaintiff; and if you further find from the evidence that the said McCready did dispose of and sell the said described property, but failed to comply with said agreement and understanding, and failed to remit the said proceeds to the plaintiff, but appropriated the same to

his own use and failed to account therefor, then and in that event you are instructed that such appropriation of the proceeds from said sale would constitute a conversion and the plaintiff herein would be entitled to recover at your hands a verdict for the market value of said property at the time so converted."

This, it is contended by counsel for defendant, was erroneous, in so far as it stated that the measure of damages would be the market value of the property at the time converted.

In further charging the jury the court stated in instruction number 10, as follows:

" The plaintiff cannot be heard to complain at this time as to the prices received for said property, and as to the matter of caring for and disposing of the said property, provided the jury find that the defendant used ordinary care and prudence in caring for, selling, and disposing of said property, and would only be obliged to account to the plaintiff for the proceeds arising from said sale after paying the expenses of feeding and caring for said property."

This latter instruction, we think, was correct, and, in view of all the evidence relating to the subject involved, stated the true rule of damages or measure of recovery. The plaintiff was allowed to testify in regard to the value of this property (defendant objecting) as follows:

Q. You may state what was the value of the personal property that you purchased at that time from McCready.

Objected to, as incompetent and immaterial, and not the proper foundation laid, and not admissible under the issues.

Q. What was the value of that personal property?

Objected to, as incompetent and immaterial, and not the proper foundation laid.     Overruled.     Exception.

A. It was thoroughbred stock—young cattle.   It was worth the money he represented it to be.

Q. What did he represent it to be worth?

A. Two thousand four hundred and seventy dollars is what he had upon the book.

This surely could not be accepted as furnishing information from which the jury should assess the amount of recovery, if any, directed as it was to the time of the purchase of the property, and, under the guidance of the language used in instruction numbered 1, in reference to their branch of the case, the jury were liable to be misled in adopting this value as the amount to be recovered. The defendant stated, while testifying on this point, that he realized from the sale of the personal property, having sold part at auction and part at private sale, after paying expenses, etc., the sum of $1,190. The verdict in the case was a general one in the sum of $2,801, and not directed or confined to any particular branch of the case, nor any statement made by which we are able to say whether it was in whole or in part given as damages for the alleged fraud and deceit practiced in inducing the sale of the farm to defendant or in whole or in part for the damages claimed to have resulted from the alleged conversion. Were it not so, we might accept the amount of the proceeds of the sale of the personal property as stated by defendant as being the amount which plaintiff should recover, and require a remittitur on his part from the amount of the verdict as rendered to make it meet this view, but the two were parts of the same transaction, and necessarily so closely connected that it seems, with all the information which can be derived from the record before us, that they must stand or fall together. This being the conclusion reached, it follows from what has been hereinbefore said in relation to portions of the proceedings during the trial that the judgment of the district court must be reversed and the case remanded.

REVERSED AND REMANDED.