STATE OF NEBRASKA V. JOSEPH S. BARTLEY ET AL.

FILED DECEMBER 8, 1898. No. 10117.

1. **Impaneling Jury**: REVIEW OF RULINGS. Retention or rejection of a juror, during the impaneling of a jury, to whom an objection has been interposed, is a matter within the discretion of the trial judge, and in the absence of an abuse of such discretion will furnish no available error.

2. **New Trial**: RULING ON MOTION: EXCEPTION: REVIEW. To obtain a review in this court of questions raised in a motion for a new trial an exception must be taken at the time of the decision to the overruling of said motion.

3. **Construction of Code**. The Code of Civil Procedure, in all its provisions and all proceedings under it, must be liberally construed, with a view to promote its object and assist parties in obtaining justice. (Code of Civil Procedure, sec. 1.)

4. **Review**: EXCEPTION TO JUDGMENT. To obtain a review of the proceedings of the trial court in a suit an exception to the final judgment is unnecessary.

5. **New Trial**: RULING ON MOTION: EXCEPTION: REVIEW. A journal entry disclosed the presentment of a motion for a new trial. In the same entry was stated that defendant moved for judgment, also the rendition of the same,—following all of which there appeared this: "To all of which plaintiff duly excepts." *Held*, Sufficient evidence of the exception to the action of the court on the motion for a new trial, although somewhat questionable practice to have the exception so noted.

6. **Instructions**: RECORD FOR REVIEW. The instructions to a jury are proper matters of the record, and need not, in general, be preserved in the bill of exceptions. (*Blumer v. Bennett*, 44 Neb. 873.)

7. **Exception**: RECORD. Taking an exception is an act of counsel in court. The evidence of the act is its notation of record. (*Blumer v. Bennett*, 44 Neb. 873.)

8. **Instructions**: EXCEPTIONS: RECORD FOR REVIEW. A prepared statement in writing of the exceptions to the giving specifically designated instructions, also to refusals to give requested ones duly filed at the proper time, indorsed by the trial judge "allowed," and authenticated as a part of the proceedings, *held* to furnish

State v. Bartley.

evidence of the exception having been made and to not be an improper manner of notation; also properly of the record.

9. ——: EVIDENCE: REVIEW. Instructions to a jury which leave that body at liberty to infer or find facts as existent, of which there is no evidence, are erroneous, and such errors, unless without prejudice, furnish ground for reversal of a judgment.

10. Action on Bond of State Treasurer: VERDICT FOR DEFENDANTS: EVIDENCE: INSTRUCTIONS. The verdict, insomuch as it was necessarily based on a negative finding upon one of the issues in relation to an alleged failure or default of a state treasurer in the performance of the obligations of his official bond, determined not sustained by sufficient evidence, contrary to the evidence, the instruction of the court, and the law.

ERROR from the district court of Douglas county. Tried below before POWELL, J. *Reversed.*

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

*John C. Cowin, E. M. Bartlett, James Manahan, Frank T. Ransom, E. E. Brown, N. S. Harwood, John H. Ames, Harwood, Ames & Pettis,* and *C. C. McNish, contra.*

HARRISON, C. J.

In the petition in this, an action commenced in the district court of Douglas county, it was pleaded that Joseph S. Bartley was duly elected treasurer of the state, for a specific stated term, furnished the necessary bond, and assumed the duties of the said office. It was further alleged that in Douglas county he converted to his own use the sum of $201,884.05, and had failed and refused to account for said sum or to turn the same over to his successor in office. · It was also set forth that he had failed to account for or pay to his successor a sum of $353,906.61, with which he as such officer stood charged. This suit was on the bond against him as principal, and the other defendants as sureties, to recover the amounts of the alleged shortages in his accounts, aggregating $555,790.66. The petition also contained an allegation that the Omaha National Bank was a duly accepted, ap-

proved, and designated state depository for funds of the state, and had on a designated date on deposit a sum of the public moneys in excess of $201,884.05. The answers of the defendants were of much the same tenor, except in that of Mary Fitzgerald there was a further defense, —that of her insanity at the time she signed the bond in suit. Of each of the answers was a portion whereby it was sought to raise the question of the jurisdiction of the trial court to entertain and hear the cause. Issues were joined, and a trial resulted in a verdict and judgment for the defendants, and the state seeks a review of the proceedings.

In the brief filed for plaintiff in error there is first contained a complaint of some orders and actions of a judge or the judges of the trial court, of whom there are several in the district of the trial of the cause, with reference to before which one the trial of the suit should be, and its ordered removal from the call which would have brought it on for trial before one of the judges to the call which caused the trial to be before another judge. Whatever there may have been of these things, an examination of the record does not disclose other than a desire of the judge who presided during the trial to fairly and impartially conduct the same. We do not know whether counsel, in the remarks on this subject, merely indulged a wish to scold a little; but whatever may have prompted the remarks, the record shows nothing reprehensible, erroneous, or extraordinary in the actions which furnished the basis for the statements in the brief.

In each of the matters of rejections and retentions of jurors, to which reference is made in the argument for plaintiff in error, the trial court might exercise its discretion; and without an abuse thereof they can furnish no cause for reversal. There was no abuse of the discretion, and the argument fails. They can furnish no cause for reversal. (*Omaha S. R. Co. v. Beeson*, 36 Neb. 361.)

We will now turn our attention to some arguments for the defendants in error relative to points of practice, in

each of which it is asserted there is a lack or failure of proper objections, or to preserve exceptions to decisions or actions of the trial court, such as precludes their presentment for review here. Of these is that there was no exception to the ruling on the motion for a new trial. Such an exception is necessary to obtain a review of questions raised in the motion. (*Van Etten v. Medland*, 53 Neb. 569; *Tuomey v. Willman*, 43 Neb. 28.) If an exception was noted to the overruling of the motion for a new trial, that it was done appears in the following journal entry: "Now, on this day, this cause coming on for hearing upon the motion of the plaintiff filed herein, to set aside the verdict of the jury heretofore rendered in this case, and for a new trial herein, the court on consideration hereof, being fully advised in the premises, overrules said motion. Thereupon, on motion of defendants for judgment on the verdict, it is considered by the court that the above entitled cause be, and the same hereby is, dismissed, and that the said defendants, and each of them, go hence without day and recover of and from the said plaintiff their costs herein expended, taxed at $——, to all of which the plaintiff duly excepts, and on application is hereby given forty days from and after the rising of the court at its present term in which to prepare and serve bill of exceptions herein." The argument here is that the entry discloses two motions,—one for plaintiff, which was overruled and no exception taken; a motion for judgment sustained, to "all of which the plaintiff duly excepts;" that this was an exception to the affirmative action on the motion for judgment and entry of judgment, or the exception was, at least, indefinite, and cannot be said to be applicable to the negative action as to the motion for a new trial. In section 1 of the Code of Civil Procedure it is prescribed: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions, and all proceedings under it, shall be liberally construed, with a view to promote its object

and assist the parties in obtaining justice." With this in view, the exception noted in the entry which we have quoted must be held directed against the order relative to the new trial. No exception to the final judgment or to the ruling by which it was rendered was necessary (*Erck v. Omaha Nat. Bank*, 43 Neb. 613); and to say, where there is a statement of an order overruling a motion for a new trial, also of a rendition of judgment, and motion for it sustained, and all are blended or appear in statement in one journal entry, and the statement in regard to exceptions is at the close of the entry, and such notation of exception is worded as the one in this case, that it is applicable to the action relative to which none was necessary, and inapplicable to the one as to which it was a vital necessity, or that it was so indefinite that the ruling against which it was specifically directed is not ascertainable or cannot be discerned, would not be giving force to the rule of construction to which we have referred, but would be to ignore it. It would doubtless in this case have been better practice to have secured an entry to be made which would have shown beyond a possibility of question, or even cavil, the exception to the order on the motion for a new trial; but we must consider the record as made, and we conclude the exception to such order is sufficiently disclosed by the record.

It is also urged for defendants that there were no exceptions to the instructions of the court, or its refusal to give requested instructions. There is in the record a copy of a paper, which the clerk of the court states was duly filed, and which is marked "Exception by plaintiff," and "Exceptions taken by plaintiff to instructions given by the court on its own motion, and to the refusal of the court to give instructions requested by plaintiff;" and the several numbered exceptions indicated by the heading appear in the body of the document, which has at its close the signature of the attorneys for the plaintiff; and there also appears on the paper the following: "Exceptions allowed. Clinton N. Powell, Judge." This,

the transcript states, was filed the day the cause was submitted to the jury, and immediately succeeding it in the transcript is the statement: "And the said jury now having heard the remaining arguments of counsel, and the charge of the court, retire to their room in charge of bailiff," etc.   In the certificate to the record is, with others, the following statement: "I, Albyn L. Frank, clerk of the district court in and for Douglas county, Nebraska, do here certify that the foregoing is a full and true transcript of the proceedings had in the cause, * * * containing the petition, * * * charge of the court, instructions asked by plaintiff and refused, exceptions by plaintiff."   In sections 52 to 56, inclusive, chapter 19, Compiled Statutes 1897, are contained directions in regard to instructions to juries and exceptions thereto.   Section 308 of the Code of Civil Procedure is to the effect that an exception must be to a decision at the time made.   Section 310 states that if the decision is entered of record, also the grounds of objection, the exception may be by a notation at the end of the decision; but nowhere do we find just how the exceptions shall be evidenced of record.

It is stated in the reply brief filed for the state that the exceptions to the instructions in this case were evidenced in accordance with the method almost universally practiced by the bar in Douglas county,—the place of trial. However this last may be, the instructions were themselves properly matters of the record in this state, and not to be preserved in the bill of exceptions.   (*Eaton v. Carruth*, 11 Neb. 231; *Cleveland Paper Co. v. Banks*, 15 Neb. 20; *Blumer v. Bennett*, 44 Neb. 873.)   Taking an exception is the act of counsel in court.   The evidence of such act is its notation on the record.   (*Blumer v. Bennett, supra.*)   We are satisfied that the manner of evidencing the exceptions in the present case was not improper, and that the notation by form of statement expressed in writing, and the prepared statement allowed and so indorsed by the trial judge, and filed with the clerk of the

court, and authenticated as a part of the proceedings, must be received as a recitation, and evidential of the exceptions; and to be so received, it need not be embodied in the bill of exceptions.

We have now noticed and determined such matters as were urged on behalf of defendants, the disposition of which must necessarily precede the examination of the questions raised in the arguments for the plaintiff.

One of the alleged shortages declared upon in the petition was of the sum of $201,884.05, and relative to this sum it was shown that the legislature had passed an act in which an amount, $180,101.75, was appropriated from the general fund of the state to reimburse the sinking fund in said amount. In the act making the appropriation the language was as follows: "For state sinking fund, one hundred eighty thousand and one hundred and one and seventy-five one hundredths ($180,101.75) dollars, to reimburse said fund for amount tied up in Capital National Bank." (Session Laws 1895, p. 404, ch. 88.) The act was approved and became of effect; and it appears that afterward a voucher signed by J. S. Bartley was presented to the auditor of public accounts and approved, and that J. S. Bartley signed a receipt thereon to the effect that he received warrant No. 95241, amount $180,101.75. The voucher to which we have just referred was a claim to the said sum for the sinking fund, and for its reimbursement, and recited the facts in substance as stated in the act of appropriation, and identified the act as being a "house roll," and gave its number. The warrant was as follows:

"TREASURY WARRANT.

"$180,101.75        STATE OF NEBRASKA.            No. 95241.
   21,782.30

─────────
$201,884.05

            "OFFICE OF AUDITOR OF PUBLIC ACCOUNTS.

                        "LINCOLN, NEB., Apr. 10, 1895.

*Treasurer of Nebraska,*

   "Pay to J. S. Bartley, or order, one hundred eighty

thousand one hundred one & 75-100 dollars, for to reimburse state sinking fund. In accordance with legislative appropriation approved Apr. 10, 1895, and charge general fund.            EUGENE MOORE,

"Countersigned:            *Auditor Public Accounts.*

    "J. S. BARTLEY,

        "*State Treasurer.*    P. O. HEDLUND, *Deputy.*"

Stamped on face with rubber stamp: "Paid Jan. 3, 1897."

The warrant and the money were the property of the state. The designated sum was but to be changed from one fund to another, as authorized by the legislative act, and the treasurer took the method indicated, presumably to effect the desired transfer. It was also of the evidence that this warrant was registered for payment on the date of its issuance, April 10, 1895; and in the "Warrant Register" the date it was paid appeared as "1|2|97;" interest $21,782.30; total $201,884.05. The evidence further disclosed that on January 2 or 3, 1897, the warrant was in the Omaha National Bank, and Joseph S. Bartley, then state treasurer, went to Omaha and to the bank, there drew his check as state treasurer, or had one with him which he had previously drawn, for the sum of $201,-884.05, payable to either the bank or "J. H. Millard, Pt.," delivered it to the cashier of the bank, and received from him the warrant, No. 95241, stamped paid. The bank was then a state depositary of funds and had more than the amount called for in moneys of the general fund of the state then on deposit. The check ordered the payment of its amount from the amount on deposit of said fund, and it was testified that it was so paid to the party in whose favor the check was drawn. The account of the bank with the general fund of the state was charged with, and diminished by, the sum so paid. The sinking fund did not receive it. There was, by all this, effected by the treasurer a misappropriation of the said amount, and a shortage created in the funds of the state. He thereby violated the obligation of his bond, and there

accrued a liability on his bond. There was also elemental of this transaction that which satisfied the jurisdictional question raised by the answers.

In regard to the occurrences in the Omaha National Bank the trial court charged the jury as follows: "You are instructed that the defendant Joseph S. Bartley, as state treasurer, had no right or authority to transfer to the Omaha National Bank, or to any other person, the title to the warrant for $180,101.75 received in evidence in this case, nor had he the right to pay the same to said bank, or to any other person, out of the money of the state of Nebraska. His sole duty in the premises was to take the money out of the general fund and turn the same into the sinking fund, credit one fund with the amount, and charge the other fund with a like amount; and if you find from the evidence that he failed to perform his duty in this regard, and paid the amount thereof to a party not entitled to receive the same, then he and his bondsmen would be chargeable in this action for such an amount, if any, as you find from the evidence the state was damaged thereby. Given." The jury, the evidence being to the effect it was on this subject of the trial, rendered a verdict which, it may fairly be said, was contrary to this instruction, and contrary to law.

In addition to the defenses interposed by and for the other defendants there was for Mary Fitzgerald, as we have before stated, the further defense of her insanity at the time she signed the instruments by which it was sought to bind her in the present action; and it is contended that there was sufficient evidence to sustain a finding in her favor as to this defense, and the verdict as to her must be affirmed. The parties are very urgent in their arguments on this branch of the case, and we have carefully weighed all the evidence which has reference to it, as, indeed, we have all of it. It would serve no useful purpose to quote from it or to summarize it here. It was conflicting and, as is often the nature of evidence, and on the subject here involved, not altogether satisfactory. It

may be further stated by way of argument alone that the instructions in regard to the issue of the insanity of Mrs. Fitzgerald, at the time she signed the instruments by which it was sought to bind her herein, were not erroneous; also that there was no error in the refusals to give the ones requested by or for the state relative to this issue; but of those given by the court on its own motion relative to the issue of any liability on the bond there were two at least which were bad in that by each the jury was allowed to deliberate and determine as to facts, and base a verdict upon said decision or finding, and of such facts there was no evidence,—was a total absence of any evidence. This was radical error (*Cropsey v. Averill*, 8 Neb. 151; *McCready v. Phillips*, 44 Neb. 790; *City of Crete v. Childs*, 11 Neb. 252; *Farmers Loan & Trust Co. v. Montgomery*, 30 Neb. 33; *La Bonty v. Lundgren*, 31 Neb. 419); and that it was committed was well calculated to mislead the jury. As to at least one, if not both, of these matters there was requested for the state an instruction by which, if it had been given in place of the one read, the error would have been avoided.

There were for Mrs. Fitzgerald two defenses. No special finding or verdict was asked for her relative to the issue of insanity, which was interposed for her, and for none other of the defendants; and no special finding as to such issue was made. The verdict was a general one in favor of the defendants. There is nothing in the record from which it can be determined whether the jury decided for or against Mrs. Fitzgerald on any particular issue. There is no means by which it can be determined; hence the court cannot ascertain it. The evidence on the question of the insanity of Mrs. Fitzgerald was not all to the one effect. That it was conflicting, we have before stated. There was error, as we have seen, in the submission of the one issue,—that of any default in the obligation of the bond,—which it cannot be said was not prejudicial; and this conclusion calls for the reversal of the verdict and judgment in favor of Mrs Fitzgerald, as

well as against the other parties. There were errors committed which it cannot be said were not prejudicial to the rights of the complaining party, and the verdict must be set aside. (*McCready v. Phillips, supra; Roberts v. Drehmer*, 41 Neb. 306; *Kansas City & Q. R. Co. v. Rogers*, 48 Neb. 653.)

A discussion of the other points would necessitate a more or less extended reference to, and comment upon, the evidence bearing upon them, and it is thought best, since the cause must be remanded for further proceedings, to not do so at this time; hence such discussion will be omitted. It follows from what has been determined herein that the judgment must be, and is, reversed and the cause remanded.

REVERSED AND REMANDED.