IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ANGEL C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ANGEL C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

v.

EFREN C., APPELLANT.

Filed November 5, 2019.    No. A-18-1158.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Noelle M. Obermeyer for appellant.

Donald W. Kleine, Douglas County Attorney, Anthony M. Hernandez, Laura E. Lemoine, and Katherine G. Corwin, Senior Certified Law Student, for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Efren C. appeals the adjudication of Angel C. as a minor child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Angel was removed from Efren's home after Angel's stepsister accused Efren of inappropriately touching her. Efren contends that the juvenile court erred in excluding certain evidence, in finding there was sufficient evidence to adjudicate Angel, and in failing to grant a continuance. For the reasons stated below, we affirm.

- 1 -

## II. STATEMENT OF FACTS

Efren and his wife, the victim's mother, reside in a home with Angel, age 7. Also residing in the home were the victim's mother's son, age 14, and daughter, age 12. On April 27, 2018, Efren's 12-year-old stepdaughter (hereinafter referred to as the victim) reported that Efren had inappropriately touched her. The following day, the State filed a juvenile petition alleging that the parties' three minor children were juveniles within the meaning of § 43-247(3)(a) due to Efren's faults or habits. Specifically, the petition alleged that Efren subjected a child to inappropriate sexual touching and sexual situations; that Efren failed to provide proper parental care, support, and/or supervision; and that due to these allegations, the parties' three minor children were at risk of harm. That same day, the parties' three minor children were removed from their home. This appeal involves only one of the minor children, Angel.

### 1. ADJUDICATION HEARING

The adjudication hearing was held over 3 days in September, October, and November 2018. The day before the scheduled adjudication hearing, the mother and Efren filed a joint motion to continue the adjudication hearing on the basis that the victim had accused a sibling of inappropriate sexual contact, that a new witness had just been identified as an unnamed visitation worker, and that it was imperative to both the mother and Efren's defense that the visitation worker be identified and located so that the individual could be brought to testify before the court. The State clarified that the information was also new to the State and that "there's a belief that the child made an allegation against a sibling, not that there actually [was a sexual assault committed]." The juvenile court acknowledged that the parents' concern was related to "having the ability to possibly make a showing with respect to [the] credibility of the child who is endorsed to testify here today." The court declined to delay the start of the adjudication hearing, but stated it might entertain another motion to continue "as we get deeper in."

### (a) Adjudication Hearing--Day 1

During the first day of the adjudication hearing, the State adduced testimony from the victim and Omaha police officer Shannon Knuth.

The victim testified Efren is her stepfather and, during the period of time when she was between 11 and 12 years old, he made her feel uncomfortable on approximately ten different occasions. The victim described the first occasion as having occurred in the kitchen when Efren came up from behind her and started hugging her and touching her breasts, vaginal area, and buttocks over her clothes. The victim did not tell her mother because she did not think that her mother would believe her. The victim testified that this happened more than once and that on some of the other occasions, Efren would put his "private part" against her "butt" over her clothes. The victim described another occasion when she entered Efren's bedroom to tell him goodnight and he touched her buttocks.

On cross-examination, the victim admitted that when she was "little," she lied when she told relatives that she did not have any change leftover after making a purchase. The victim testified that she had a cell phone during the first 2 weeks of January 2018, but her parents took the cell phone because she did not help with chores at home. Efren's counsel asked the victim if

she had a Facebook account and the State objected on the basis of relevance and Neb. Evid. R. 412, Neb. Rev. Stat. § 27-412 (Reissue 2016). Efren's counsel stated:

> Judge, this gets to motive as the timeline of events, per the parents, establishes that they took [the victim]'s phone away for her activity on that phone, and I would like to address . . . why that upset [the victim] and why that might speak to motive to fabricate.
>
> [GUARDIAN AD LITEM FOR THE CHILDREN]: Your Honor, I would object on foundation and to the contents of the messages. I think that she can ask [the victim] about whether or not her parents did something to make her be mad at them, but I don't think that the contents are relevant to establishing motive, just the actions taken by her parents.
>
> [STATE'S ATTORNEY]: And, Your Honor, this also falls under 412. They're going to try and show that any type of sexual stuff that may or may not have happened on Facebook may have caused this, that it's sexual in nature. They didn't provide any notice. There's a two-week requirement of notice and a motion that should be heard to see if that information will be admissible in a civil trial under 412. That wasn't done. There was no notice given that they're going to be presenting this. If it's not sexual in nature, then it wouldn't be relevant.
>
> So I would ask that it be inadmissible, the entire line of questioning regarding Facebook.
>
> THE COURT: Well, I'm not going to -- I'm going to sustain the objection, but . . . I'm not prohibiting the entire line of questioning, but Facebook is off the table now. Go ahead.
>
> [EFREN'S COUNSEL]: Your Honor, if I may make the same show of proof that I made regarding the previous statement under the 412 with the case law in State v. Lavalleur.
>
> THE COURT: Go ahead.
>
> [EFREN'S COUNSEL]: And that case, again, allowed the admission being that the information was to establish motive and not just as evidence of past sexual predisposition, presexual behaviors. So just for clarification purposes, I can't ask the client if she has a Facebook account? Because that's the only question I've asked.
>
> THE COURT: I'm not going to let you get into what's in any Facebook account, so Facebook is off the table.

Efren's counsel clarified:

> Judge, just so we have a clear record, I anticipate that you would make the same ruling as you did with Facebook and the cell phone with regards to any other information that I would inquire about for Snapchat, WhatsApp, the Boost Mobile text message feature on the phone in question. And so I would . . . just like to make the record clear that I would like to make a line of inquiry, but I'm anticipating a limitation from the Court, and I would ask a show of proof be made with reference to all of those other messaging systems and phone content.

THE COURT: You can make your offer of proof.

[EFREN'S COUNSEL]: Okay. And, Judge, I would make the same offer of proof, that I believe that this is an exception to the 412 rule under the same case cited, [*State v. Lavalleur*,] 289 Neb. 102, [853 N.W.2d 203 (2014),] where information went to establish motive and is meant -- clearly, the statute is meant to stop harassing and humiliating the witness; however, this would be a Sixth Amendment Right of my client to confront the witness and speak, specifically, to motive and reason to falsify information.

THE COURT: I guess I should know would there be an objection to that line of questioning from any party?

[STATE'S ATTORNEY]: Yes, Your Honor, there would be an objection from the State. And the State would also argue that the confrontation clause has never been found to be admissible or a requirement in civil matters. And this is a civil matter. The first line of the Sixth Amendment is in all criminal actions.

THE COURT: And does that conclude your offer of proof. . . .

[EFREN'S COUNSEL]: Yes.

THE COURT: The objection is sustained.

As its second witness, the State called Knuth, who testified that she works in the child victim sexual assault unit. Knuth became familiar with the victim after the victim made allegations that Efren had inappropriate sexual contact with her. After conducting an investigation, Knuth arrested Efren for the felony offense of third degree sexual assault of a child. Knuth also testified that she determined that the victim and other children were at risk for harm if they remained in the home. Knuth testified that, during her interview with the victim's mother, the mother indicated that she did not believe the victim's allegations against Efren. Knuth testified that the mother identified that 3 or 4 years ago, when the parties lived in Mexico, the victim had made another allegation of sexual assault. The victim's mother indicated that the false nature of that prior allegation was one reason she believed that the victim was lying in the current case. Knuth also testified that the mother attempted to show her the victim's phone because the victim "was still talking to the boy that allegedly sexually assaulted her in Mexico" and this boy was "older." Knuth also testified that the mother told her that "she had [the victim's phone] that day, and . . . she had taken the phone away from [the victim] and that's why [the victim] was making up these allegations." Knuth testified that, although the mother attempted to show her text messages on the victim's cell phone, Knuth did not view them.

At the conclusion of the first day of the adjudication proceedings, Efren and the victim's mother renewed their motion to continue the proceedings with no objection from the State. The court granted a continuance noting that the parties had only received notification the previous day of the victim's allegation of sexual assault made against her sibling and the issue might "affect credibility issues."

(b) Adjudication Hearing--Day 2

When the adjudication hearing resumed on October 9, 2018, the State rested. No evidence was presented by either the victim's mother or the guardian ad litem (GAL) for the children. Efren called the victim's mother and the victim as witnesses.

The victim's mother testified that, earlier in the year, she became concerned about the victim's behavior. She stated that in mid-April 2018, the school reported to her that teachers saw the victim kissing a boy. The victim's mother also reported that the victim was isolating herself in her room while using her cell phone and was "acting strange[ly]." Due to her concerns with the victim's behavior, the victim's mother sought "counseling help" for assistance with confronting the victim over the victim's behaviors, but they "were barely going to get started with counseling." The victim's mother stated that, approximately 2 to 3 years ago, the victim had received psychological counseling in Mexico for lying and "steal[ing] out of anxiety" but those problems had been resolved.

The following colloquy then occurred between Efren's counsel and the victim's mother regarding the victim's Facebook name and password:

[EFREN'S COUNSEL]: Did you have a conversation with [the victim] about her Facebook name and password?

A. Yes.

Q. Why?

[GAL FOR THE CHILDREN]: Objection, relevance. And I believe that this evidence about the contents of her Facebook was precluded . . . during the State's case in chief . . . .

THE COURT: I remember. Where do you intend to go with this?

[EFREN'S COUNSEL]: I want to ask the mother questions about taking [the victim]'s phone away, what materials were found on the phone that gave the mother cause for concern, and what happened -- what the mother observed on the phone afterwards.

[STATE'S ATTORNEY]: Your Honor --

[GAL FOR THE CHILDREN]: And I think that --

[STATE'S ATTORNEY]: -- that would go under 412. That's specifically what 412 --

THE COURT: Well, just a minute. Is it sexualized behaviors of the minor child with anyone other than -- other than Efren . . . that you are trying to get to? Yes or no?

[EFREN'S COUNSEL]: Not sexualized behaviors, sexually-heightened conversations that were taking place on the phone.

I don't believe anyone has any knowledge of any video sex going on necessarily, but I do believe that Mother had concerns based on phone calls that the mother received while she was in possession of the phone, in addition to screen shots that the mother took.

This, I don't believe, falls under 412 because there are -- these are statements. These aren't -- I'm not looking to assert that the child --

THE COURT: Statements of whom?

- 5 -

[EFREN'S COUNSEL]: Statements that are made via text message by the owner of the phone and the other participant, having conversations back and forth on Facebook and text message.

THE COURT: Sexualized conversations?

[EFREN'S COUNSEL]: Yes, conversations that were sexually heightened, although in my review there's nothing -- there's no evidence that this child was having phone sex, which would be, I believe, conversations about sex through audio, nor do I have reason to believe that she was having video sex, which would be her having sexualized behavior through video functions on the telephone. But I do believe that there are statements in conversations back and forth that Mother saw that gave her concern and gave her a reason to take the phone away, which get to why I believe she's made these allegations against her father.

That would be -- that would be the defense -- defense's case, that this is a retaliation based on Mother and Father taking away the phone and also Mother and Father looking at these conversations and having cause for concern; also, again, Mother receiving a phone call that she has told me about on a previous occasion that is -- that is highly sexualized and is a video phone. But [the victim] is not involved in that phone conversation at all. It's just the mother.

[GAL FOR THE CHILDREN]: Your Honor, may I respond:

THE COURT: Yes.

[GAL FOR THE CHILRDEN]: I still think that this goes to sexual predisposition, but, in any event, under Leslie and Lavalleur, 412 still requires the notice for us to have a hearing to determine this. So there was no notice given for us to even litigate this issue.

But even if they're arguing that this is a motive to fabricate under Leslie or Lavalleur, that does not permit them to go into the contents. They can certainly get into if Mom took her phone away --

THE COURT: And I --

[GAL FOR THE CHILRDEN]: -- and it made the child mad, that's fine, but --

THE COURT: And I agree. I'll sustain the objection, but you are not precluded from getting the fact, if, indeed, it is a fact, that the phone was confiscated from the child by the parent, and make what you will of that.

[EFREN'S COUNSEL]: I'm sorry. Can I get --

THE COURT: You can't get . . . into the contents on the phone.

[EFREN'S COUNSEL]: I can ask what the mother reviewed of the phone, though --

THE COURT: No, you may not.

[EFREN'S COUNSEL]: -- after the fact?

THE COURT: You may ask her . . . I'm not going to do your case for you. You can ask her if she took the phone away and, I think a general description of why. And I'm really hesitant to even say that because you're going to probably take that as far as you can go. But the fact of the taking of the phone and what her belief is as to the motive of the child from that point on.

The objection is sustained.

[EFREN'S COUNSEL]: And, Your Honor, may I make a show of proof at this time:

THE COURT: Yes, you can.

[EFREN'S COUNSEL]: Judge, I would point the Court to 257 Neb. 903 State of Nebraska v. Richard Lessley. That's an October 15, 1999 opinion.

. . . .

While I know that the fact pattern [in Lessley] is quite different than the one [in] the case at hand, I do believe that the holding is still relevant to our case at hand as I do believe my client has a right to confront the witness about evidence related to the phone.

Specifically, I believe that the phone is not evidence of sexual actions in the past. I'm simply trying to get admissible statements in. We're not cross-examining at this time the alleged victim, so the heart of 412 wouldn't be applicable to someone who isn't the one that's having these alleged sexual behaviors. But, again, I would point that I don't believe that we're actually talking about sex acts at all. We're talking about conversations on a phone.

THE COURT: All right. And that is not an offer of proof. That is further argument. The objection is still sustained.

Efren's attorney resumed examination of the victim's mother, who testified that she took the victim's phone away in mid-April 2018, which caused the victim to become "very upset," quit doing her household chores, stop talking to her mother and Efren, and continue "to lock herself up." After confiscating the victim's phone the mother saw "concerning" things on it including content of Facebook, Whatsapp (a text messaging app), and Instagram. The victim's mother also testified that she received concerning phone calls on the victim's phone. The victim's mother testified that she told the victim that she had viewed the contents of the victim's phone the day before the victim made the allegations against Efren. The mother testified the victim got very angry and responded "that she was going to hurt me where it hurt the most, that she was going to take me to the police." The victim's mother opined that the victim made the allegations against Efren in response to what her mother had "found on [the victim's] phone." When the State's attorney asked if the mother "believe[d] the stuff that you found made [the victim] make up these allegations against Efren," she responded, "Of course."

Efren called the victim as his second witness. He asked her if she ever reported to her visitation worker that her brother had touched her inappropriately. The State objected and Efren's counsel explained that the question was relevant because the victim's allegations were similar, and close in time, to the allegations the victim made against Efren. Efren's counsel stated that he wanted to know, "for impeachment purposes," whether the victim made those statements, but the State argued that a party cannot call, or recall, a witness solely to impeach the witness' prior testimony. Efren stated that he was not calling the victim solely for impeachment purposes, but that he also wanted to know "what has been done with the allegations against her brother." The court sustained the State's objection. Efren then made an offer of proof stating that, if allowed, the victim would testify that she did make allegations against her brother to a visitation worker in early

May 2018. Alternatively, Efren's counsel stated that if the victim denied making allegations against her brother, counsel would be able to, among other things, use the allegations for impeachment purposes. The court continued to sustain the State's objection.

### (c) Adjudication Hearing--Day 3

The third and final day of the adjudication hearing was held on November 13, 2018. Efren called Knuth to testify regarding the victim's alleged statements accusing her brother of sexual assault. Knuth testified that "an advocate . . . or a [Child Protective Services] worker" told her that the victim had made a statement about her brother sexually assaulting her. Knuth did not make the allegation a part of her investigation because the allegation was a "third-party disclosure" with language barriers which could have led to a misinterpretation or misunderstanding; therefore, a suggestion was made that the victim be placed in therapy for a possible therapeutic disclosure.

At the conclusion of the adjudication hearing, Efren requested another continuance because three of his witnesses had not appeared despite subpoenas being issued. The court denied the motion and the hearing concluded.

### 2. ADJUDICATION ORDER

The juvenile court found that Angel was a juvenile within the meaning of § 43-247(3)(a) based upon its findings that Efren had subjected a child in the household to inappropriate sexual contact and situations and that Angel was at a risk for harm in his father's care. Efren has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Efren contends that the juvenile court erred in (1) excluding evidence of the contents of the victim's cell phone and social media use on the basis that the evidence was barred by the rape shield law, (2) finding that there was sufficient evidence to adjudicate Angel, (3) refusing to allow Efren to question the victim regarding sexual assault accusations the victim made against her brother, and (4) denying his request for a continuance to produce necessary witnesses who failed to appear despite being subject to subpoenas.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

An appellate court independently decides questions of law presented on appeal. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Id.* We review for abuse of discretion a trial court's evidentiary rulings on relevance, and whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Id.* Whether evidence is excluded under the rape shield statute is reviewed de novo as a matter of law. See *State v. Lavalleur,* 289 Neb. 102, 853 N.W.2d 203 (2014), *disapproved on other grounds*, 292 Neb. 424, 873 N.W.2d 155 (2016).

An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016).

## V. ANALYSIS

### 1. ADMISSIBILITY OF CONTENTS OF VICTIM'S CELL PHONE AND VARIOUS SOCIAL MEDIA OUTLETS

Efren argues that the juvenile court erred in excluding relevant, probative evidence of the contents of the victim's cell phone and evidence regarding the victim's use of various social media outlets on the basis that the evidence was barred by § 27-412; that exclusion of the evidence violated his right to confront his accuser; and that the court erred in refusing to allow the victim's mother to testify about the contents of the victim's cell phone after the door was opened on the State's cross-examination.

#### (a) Exclusion of Evidence Pursuant to § 27-412

Efren's counsel was precluded from questioning the victim's mother regarding her knowledge about the victim's use of the cell phone and the mother's concerns which preceded the mother's decision to confiscate the victim's cell phone on the basis that the questioning violated § 27-412. During an offer of proof, Efren's counsel stated, "I want to ask the mother questions about taking [the victim]'s phone away, what materials were found on the phone that gave the mother cause for concern, and what happened -- what the mother observed on the phone afterwards."

Efren also contends that the juvenile court erred in barring him from questioning the victim about her use of Facebook, Snapchat, WhatsApp, and the Boost Mobile text message feature. Efren argues that "[t]here is a significant amount of information that would not have touched on sexual behavior or sexual predisposition, including the number of conversations, the names of the people conversing, their ages, location, the topics of discussion, and a number of other questions." Brief for appellant at 22. He also argues that he sought "to establish a timeline of events regarding activity on the account and when [the victim] had her phone taken away from her, which would help establish a motive to fabricate because [the victim] was mad at her parents[.]" *Id.*

Section 27-412 provides, in pertinent part:

(1) The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subsections (2) and (3) of this section:

(a) Evidence offered to prove that any victim engaged in other sexual behavior; and

(b) Evidence offered to prove any victim's sexual predisposition.

(2)(a) . . . .

. . . .

(b) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any victim is admissible if it is otherwise admissible under the Nebraska Evidence Rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of a victim's reputation is admissible only if it has been placed in controversy by the victim.

(3)(a) A party intending to offer evidence under subsection (2) of this section shall:

(i) File a written motion at least fifteen days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause, requires a different time for filing or permits filing during trial; and

(ii) Serve the motion on all parties and notify the victim or, when appropriate, the victim's guardian or representative.

(b) Before admitting evidence under this section, the court shall conduct a hearing in camera outside the presence of any jury.

(We note that § 27-412 was amended effective May 18, 2019; however, that amendment is not applicable to the instant case.)

Subject to several exceptions, § 27-412(1) bars "[e]vidence offered to prove that any victim engaged in other sexual behavior" and "[e]vidence offered to prove any victim's sexual predisposition" in civil or criminal proceedings involving alleged sexual misconduct. § 27-412(1)(a) and (b). See *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

Nebraska's rape shield statute serves two purposes. First, the statute protects rape victims from grueling cross-examination about their past sexual behavior or sexual predisposition that too often yields testimony of questionable relevance. Second, the rape shield statute prevents the use of evidence of the complaining witness' past sexual conduct with third parties or sexual predisposition from which to infer consent or undermine the witness' credibility. The rape shield statute is not meant to prevent defendants from presenting relevant evidence, but to deprive them of the opportunity to harass and humiliate the complaining witness and divert the jury's attention to irrelevant matters.

*Id.* at 751, 915 N.W.2d at 809.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019).

Here, Efren's counsel was prohibited from questioning the victim, and the victim's mother, regarding the victim's social media use and the contents of the victim's cell phone on the basis that such questioning violated Nebraska's rape shield law. Efren sought to adduce this evidence to establish that the victim was lying about the sexual abuse as retaliation for her mother taking the victim's cell phone away following her discovery of the contents on that phone. The State argues that "[d]igging deeper into the specific 'concerning content' on [the victim]'s phone has low probative value and opens a dangerous path to confusing the issues before the Court." Brief for appellee at 25.

We first note that the State objected to the contents of the phone and other social outlets on the basis of relevancy, unfair prejudice, and § 27-412. After listening to arguments from both

counsel, the court appeared to sustain the objection on the basis of § 27-412. In that regard, Efren argues the court erred for two separate reasons. First, Efren argues that the contents of the phone and other social media outlets included both sexual content and non-sexual content and that § 27-412 would not apply to the nonsexual content. Second, Efren argues that, as to that portion of the information involving sexual content, the evidence was not being offered to prove the victim's other sexual behavior or sexual propensity, but instead was being offered to show that the victim's parents' removal of the phone and the highly personal information contained therein provided sufficient motive for the victim to fabricate a claim against Efren in retaliation for the phone's removal.

As to Efren's first argument that certain content on the phone or other social media outlets contained some material that was nonsexual, we agree that § 27-412 would have no application. Accordingly, as to that content, the court should have conducted a relevancy and unfair prejudice analysis governing the content of the phone and social media outlets based upon the State's additional objections on those bases.

As to Efren's second argument that the sexual content being offered was not being offered to prove prior sexual behavior or sexual propensity, we acknowledge that § 27-412 does not exclude evidence being offered for a purpose other than to prove the victim engaged in other sexual behavior or to prove the victim's sexual predisposition, and further acknowledge that in civil matters, even if offered to prove other sexual behavior or sexual predisposition, § 27-412 does not necessarily act as a complete bar to said evidence. As the rule states for civil cases, "evidence offered to prove the sexual behavior or sexual predisposition of any victim is admissible if it is otherwise admissible under the Nebraska Evidence Rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." § 27-412(2)(b). Thus, as to both the nonsexual content and the sexual content the court was obligated, in light of the State's objection, to undergo a relevancy analysis in order to determine whether the contents of the phone and other social media outlets was admissible here.

However, we are also cognizant of the Nebraska Supreme Court's statements in *State v. Schreiner*, 276 Neb. 393, 407, 754 N.W.2d 742, 755 (2008):

Pursuant to Neb. Evid. R. 103(1)(b), [Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995),] error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. So, in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited.

The offer need not be a detailed recitation of the excluded testimony, but simply enough to provide the general nature of the testimony so that an appellate court can properly review its effect. *Birkel v. Hassebrook Farm Serv.*, 219 Neb. 286, 363 N.W.2d 148 (1985).

Here, when the trial court asked Efren to make an offer of proof as to the contents of the phone and other social media outlets that Efren desired to admit into evidence, the following colloquy ensued:

[EFREN'S COUNSEL]: And, Your Honor, may I make a show of proof at this time.

THE COURT: Yes, you can.

[EFREN'S COUNSEL]: Judge, I would point the Court to 257 Neb. 903, State of Nebraska v. Richard Lessley. That's an October 15, 1999 opinion.

. . . .

While I know that the fact pattern [in *Lessley*] is quite different than the one [in] the case at hand, I do believe that the holding is still relevant to our case at hand as I do believe my client has a right to confront the witness about evidence related to the phone.

Specifically, I believe that the phone is not evidence of sexual actions in the past. I'm simply trying to get admissible statements in. We're not cross-examining at this time the alleged victim, so the heart of 412 wouldn't be applicable to someone who isn't the one that's having these alleged sexual behaviors. But, again, I would point that I don't believe that we're actually talking about sex acts at all. We're talking about conversations on a phone.

THE COURT: All right. And that is not an offer of proof. That is further argument. The objection is still sustained.

We agree with the trial court that, although Efren was provided an opportunity to make an offer of proof governing the contents of the phone and other social media outlets he desired to elicit (which opportunity was provided on more than one occasion), Efren never described the content in a manner which would allow this court to determine whether the contents were relevant or unfairly prejudicial to this proceeding. We further note that Efren did elicit testimony from the victim's mother that she believed the victim fabricated the claim against Efren because the mother had taken the victim's phone which contained evidence of "troubling materials" and, during the period of the time when the victim's phone was in her possession, the victim's mother received a sexualized phone call from a man she could not identify. On balance, because Efren did proffer evidence of his theory that the victim fabricated the claim in response to her phone being taken away, and because there is nothing in the record that provides a sufficient description of the phone's contents or the contents of other social media outlets (other than that which was admitted into evidence) that allows this court to determine whether the content was relevant to the proceeding or whether the exclusion of that content affected a substantial right of Efren, we hold that Efren's offer of proof failed to demonstrate that the court excluded relevant evidence and that the exclusion of that content unfairly prejudiced a substantial right of Efren in connection with this adjudication proceeding.

(b) Additional Claims Regarding Cell Phone Evidence

Efren also claims that the exclusion of the content of the victim's cell phone and social media outlets violated his right to confront his accuser and that the door was opened to the testimony by questions elicited by the State during cross-examination.

We first note that in relation to Efren's Confrontation Clause assertion, the Nebraska Supreme Court has previously held in *In re Interest of Brian B. et al.*, 268 Neb. 870, 875, 689 N.W.2d 184, 189 (2004):

> Because this is a juvenile proceeding and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. See *In re Interest of Kelley D. & Heather D.,* 256 Neb. 465, 590 N.W.2d 392 (1999). Compare *State v. Vaught*[, 268 Neb.] 316, 682 N.W.2d 284 (2004) (Confrontation Clause analysis of child's statement to physician under § 27-803(3)). Instead, the proper analysis is whether [the parent's] due process rights were violated. See *In re Interest of Kelley D. & Heather D., supra.*

In further explaining due process rights in connection with a juvenile proceeding, the Supreme Court went on to hold:

> The concept of due process embodies the notion of fundamental fairness and defies precise definition. *In re Interest of Kelley D. & Heather D., supra; In re Interest of L.V.,* 240 Neb. 404, 482 N.W.2d 250 (1992). As we noted in *In re Interest of Kelley D. & Heather D.,* Neb. Rev. Stat. § 43-279.01(1)(d) (Reissue 2004) states in part that where a parent or custodian appears in an adjudication proceeding, the court shall inform the parties of the right to confront and cross-examine witnesses. In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *In re Interest of Kelley D. & Heather D., supra.* Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.*; *In re Interest of L.V., supra.*

*In re Interest of Brian B. et al.*, 268 Neb. at 875-76, 689 N.W.2d at 189-90.

Here, we note that Efren was not prohibited from confronting the victim and actively cross-examined the victim during the trial. Instead, Efren argues that not being able to cross-examine the victim on the content of her phone or social media outlets was a denial of due process. But as we noted before, Efren failed to provide the court with any description of the content of the phone or other social media outlets for this court to determine whether the content was relevant or whether exclusion of the content unfairly prejudiced a substantial right of Efren in connection with the adjudication proceeding. Because Efren was able to confront the victim and elicit testimony that the removal of the victim's phone provided the victim with motive to fabricate the claim, we fail to see how the court's prevention of Efren from delving into the phone's contents deprived Efren of "fundamental fairness" here and Efren did not provide the court with any context within which we could determine that the exclusion of this evidence unfairly prejudiced a substantial right of Efren. Because of this, we hold that Efren's assignment that his due process rights were violated fails.

Similarly, in relation to his claim that the State opened the door to this testimony, in light of the State's objection, the testimony still had to be relevant in order to justify its admission, and without a sufficient description of its contents to enable this court can determine its relevancy or prejudicial effect, Efren's assignment on this basis similarly fails.

## 2. FINDING SUFFICIENT EVIDENCE
## TO SUPPORT ADJUDICATION

Second, Efren claims that the court erred in finding that there was sufficient evidence to adjudicate Angel.

In *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 845-46, 910 N.W.2d 789, 798-99 (2018), the Nebraska Supreme Court stated:

> To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of Neb. Rev. Stat. § 43-247 (Reissue 2016). Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian."

> The purpose of the adjudication phase is to protect the interests of the child. The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. The State must prove such allegations by a preponderance of the evidence.

Efren argues that the court erred in adjudicating Angel. He contends that the State failed to prove, by a preponderance of the evidence, that Efren sexually assaulted Angel's step-sister and that the evidence actually supported that the victim fabricated the claim against Efren to retaliate against him and the victim's mother for taking the victim's phone. In support of this theory, Efren points to the State's failure to call any other person in the household to corroborate the victim's allegations and documents evidence of the victim's prior history which could lead a factfinder to conclude the victim was capable of fabricating the allegations. That said, the victim testified at trial, under oath, to specific allegations of sexual misconduct which, if true, would clearly support Angel's adjudication as a child within the meaning of § 43-247(3)(a). See *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985) (holding father's previously abusive acts against another minor child is sufficient basis for juvenile court's intervention regarding that father's parental rights with different child). Further, Detective Knuth testified that, based upon forensic interviews with the victim's siblings and the interviews of the victim and her mother, she concluded that a sexual assault had occurred. And although we conduct a de novo review of the record, we note that where credible evidence is in conflict on a material issue of fact, we may consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted on version of the facts rather than another. See *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003). We find that upon our de novo review of the record, while giving weight to the fact that the trial judge heard and observed the witnesses and found the victim's testimony to be credible, there is sufficient evidence in the record to support the court's determination that Angel comes within the meaning of § 43-247(3)(a).

## 3. REFUSAL TO ALLOW QUESTIONING OF VICTIM REGARDING
## NEW SEXUAL ASSAULT ALLEGATIONS

Efren next claims that the court erred in refusing to allow him to question the victim regarding a separate sexual assault accusation the victim made against her brother.

This trial took place over three separate days in September, October, and November 2018. This assignment of error relates to the court's ruling governing questions posed to the victim about her separate accusation of a sibling of inappropriate sexual contact which Efren's counsel attempted to elicit on the second day of trial nearly 1 month after the trial had commenced and following a continuance. Prior to the first day of trial in September, Efren had requested a continuance of the adjudication hearing on the basis that he desired to pursue new information about the victim's possible sexual assault accusation against her brother which accusation apparently was brought to the parties' collective attention. In connection with that motion, the State indicated "there's a belief that the child made an allegation against a sibling, not there actually [was a sexual assault committed]." The court acknowledged the parents' concern related to "having the ability to possibly make a showing with respect to [the] credibility of the child who is endorsed to testify here today." The court denied the motion to continue but acknowledged it might entertain a later motion "as we get deeper in." At the end of the first day of trial, the court ultimately granted the continuance noting that the parties had only been notified the previous day of the victim's allegation against her brother and the issue might "affect credibility issues."

The victim testified on the first day of trial and Efren did not raise questions about the alleged accusation involving her brother at that time. Instead, in October 2018, Efren recalled the victim and attempted to ask questions about the separate allegation involving the victim's brother now nearly one month following the commencement of trial. The following colloquy then ensued in relation to an alleged statement the victim made to a woman named Vanessa who the victim identified as a person who was present during visitations with her mother after the victim was removed from her home:

Q. Was there ever an occasion that you talked to Vanessa about being touched by your brother. . . ?

[STATE'S ATTORNEY]: Objection, your honor. Relevance.

THE COURT: What is the relevance, Counsel?

[EFREN'S COUNSEL]: Judge, I believe that the statement is relevant because it is mere weeks after the allegations against the father. It's close in time. It's highly relevant because it's the same allegations the father is facing.

And further, Judge, I believe that the State has deemed that the statements were false statements, and so I just want to know whether or not she made these statements for impeachment purposes.

[STATE'S ATTORNEY]: So then she -- Your Honor, if she's calling her witness simply to impeach her, that's not permissible [either].

[EFREN'S COUNSEL]: Judge, I'm not calling her simply to impeach her. I, actually, want to know what has been done with the allegations against her brother, specifically.

THE COURT: The objection is sustained.

The court then provided Efren with an opportunity to make an offer of proof. In connection with that offer, Efren's counsel stated as follows:

Well, Your Honor, I believe that [the victim] would testify one of two ways. I believe that, if allowed, she would testify that she did make allegations against her brother to a visitation worker who was employed through Beneficial early in May of 2018. I believe that would be her testimony because that's what is contained in the IA report. And I've talked to other individuals who confirm that these allegations were communicated to them.

In the alternative, there is a chance that she would testify here today that she did not make any allegations against her brother . . . . While I can't be sure of that, I wanted to explore that opportunity to understand what happened with the rest of the investigation with regards to the internal procedures of both Promiseship and Project Harmony and then the Omaha Police Department.

I'm well aware of the fact there are no allegations about [the victim's brother] in the filing that the County Attorney has done, although it's my understanding that the State has been made aware of these allegations coming from the [victim] previously.

If allowed -- if she were to testify that these allegations -- that she did make them, it would allow me to further question other caseworkers in this particular case as to what's being done to get a better picture of how the State -- whether or not the State believes the allegations to be true or not and what they are doing to address them.

If she were to testify that she didn't make these allegations, I would be able to use this as impeachment testimony; however, that's not the only reason that I'm doing this because she could very well testify that she did make allegations against the brother. I don't know what she will say today, but I believe that I should have that opportunity.

Following this offer of proof and after hearing further argument from Efren's counsel, the court ultimately ruled as follows:

What I am hearing, then, is that you've recalled this witness and made this witness your own witness for the purposes of, essentially, kind of a concise fishing expedition to see if you can walk her into saying something that would lead to this witness being impeached, either by her own testimony or testimony of others. It's impermissible to call a witness to set them up for impeachment. And so the ruling will stand as it is, and the child is released.

Efren argues that the testimony was relevant and that the court erred in excluding it. In its ruling, although the court appeared to focus more on the issue of Efren calling the witness simply to impeach her, Efren actually made a second argument in relation to its relevance. That second argument was that, in the event the victim acknowledged the accusation, Efren desired to further pursue the outcome of that allegation in relation to the current accusation. We will discuss each argument independently.

First, counsel argued in the offer of proof that if the victim denied the accusation against her brother, she should be able to impeach the victim to show that the victim did make the accusation thereby attacking the victim's credibility. But as the Nebraska Supreme Court noted in

*Nickolizack v. State*, 75 Neb. 27, 105 N.W. 895 (1905), that tactic is impermissible. In *Nickolizack*, the defendant was on trial for sexual assault and, in connection with that charge, the prosecution attempted to elicit testimony about a prior sexual assault which the defendant denied. The prosecution then called a separate witness in order to establish that the defendant was being untruthful about the collateral event. But in doing so, the Nebraska Supreme court held:

> The rule is too well established to admit of question that, where a witness is cross-examined on a matter collateral to the issues, he cannot, as to his answer be contradicted by the party putting the question. When a party, on cross-examination, asks a witness an immaterial question, he is concluded by the answer and will not be permitted to *call a witness* to contradict it. *McDuffie v. Bentley,* 27 Neb. 380; *Carpenter v. Lingenfelter,* 42 Neb. 728; *Farmers Loan & Trust Co. v. Montgomery,* 30 Neb. 33; *Johnston v. Spencer,* 51 Neb. 202. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issues, for the purpose of contradicting him by other evidence if he should deny it, thereby discrediting his testimony. *Carter v. State,* 36 Neb. 481. The rule is perhaps more strongly stated in *Republican Valley R. Co. v. Linn,* 15 Neb. 234, where it is said:

>> "A party who on cross-examination of a witness asks him an immaterial question is concluded by his answer and cannot call another witness to impeach him."

> That this evidence was incompetent and immaterial there can be no question. In *McAllister v. State,* 112 Wis. 496, it was held: "On a trial for an assault with intent to rape, evidence of an attempt of accused to commit a similar crime on another person is inadmissible."

> In *Elliott v. State,* 34 Neb. 48, where the accused was a witness in his own behalf, the prosecuting officer on cross-examination questioned him as to his being charged with the commission of a similar independent offense, one not connected with the crime for which he was being tried, and such cross-examination was held to be highly improper and prejudicial.

*Nickolizack v. State*, 75 Neb. at 29-30, 105 N.W. at 896-97.

In Efren's offer of proof, he was suggesting that, if the victim denied the allegation, it was Efren's intent to pursue evidence on this collateral issue in order to impeach her credibility. If this was the basis for recalling the victim, the court did not err in finding that cross-examining the victim on this collateral and irrelevant matter (as we discuss in the next paragraph) in order to impeach her testimony was improper.

Alternatively, if the victim was to acknowledge the accusation, Efren stated in his offer of proof:

> I wanted to explore that opportunity to understand what happened with the rest of the investigation with regards to the internal procedures of both Promiseship and Project Harmony and then the Omaha Police Department.

> I'm well aware of the fact there are no allegations about [the victim's brother] in the filing that the County Attorney has done, although it's my understanding that the State has been made aware of these allegations coming from [the victim] previously.

If allowed -- if she were to testify that these allegations -- that she did make them, it would allow me to further question other caseworkers in this particular case as to what's being done to get a better picture of how the State -- whether or not the State believes the allegations to be true or not and what they're doing to address them.

So Efren's offer of proof was not that he could put on evidence to show the victim made a false claim against her brother. Instead, Efren requested the opportunity to put on evidence to determine what might have happened in connection with that accusation. In its order, the court referred to Efren's offer of proof as suggesting a "fishing expedition" in connection with that collateral issue and we agree. The Nebraska Supreme Court very recently considered a similar scenario in *State v. Lee*, 304 Neb. 252, ___ N.W.2d ___ (2019), wherein the Supreme Court affirmed the district court's denial of a defendant's motion seeking to admit testimony regarding a different sexual assault involving the victim's brother in the defendant's sexual assault trial. The Nebraska Supreme Court held:

> [The victim]'s brother had not been convicted or adjudicated of the allegations that he had sexually assaulted [the victim]. As a result admission of the evidence would have led to a potentially distracting "trial within a trial" which would have substantially risked confusing the issues and misleading the jury. Moreover, an inquiry into whether [the victim] was also abused by her brother would have done nothing to offset [the second victim]'s testimony that Lee had abused her.

*Id.* at 275, ___ N.W.2d at ___. Similarly, Efren's counsel admittedly was uncertain what had happened regarding any allegation made by the victim concerning her brother and sought to conduct a "trial within a trial" in connection with that collateral issue. We hold that on the basis of Efren's offer of proof, the court did not err in finding that the line of questioning of the victim lacked relevance. This assignment of error fails.

### 4. DENIAL OF REQUEST FOR CONTINUANCE

Finally, Efren contends that the court erred in denying his request for a continuance to produce necessary witnesses who failed to appear despite being subject to subpoenas.

Neb. Rev. Stat § 25-1148 (Reissue 2016) governs the requirements for requesting a continuance. Section 25-1148 requires that the motion be in writing and supported by an affidavit. Although it is not determinative, an appellate court considers whether the moving party complied with § 25-1148 in determining whether the trial court abused its discretion in granting or denying a motion to continue a trial. See, *State v. Perez,* 235 Neb. 796, 457 N.W.2d 448 (1990); *State on behalf of Keegan M. v. Joshua M.*, 20 Neb. App. 411, 824 N.W.2d 383 (2012); *In re Interest of Azia B.*, 10 Neb. App. 124, 626 N.W.2d 602 (2001). The failure to comply with § 25-1148 is a procedural defect that affects the technical rights of an opposing party. See *State on behalf of Keegan M. v. Joshua M., supra*. It does not affect the opposing parties' substantial rights. *Id.*

Here, Efren argues that he subpoenaed a total of four witnesses to appear at the November 13, 2018, adjudication hearing. The court dismissed the first witness after the State objected that this witness had been present during prior testimony in violation of the sequestration order. After

the court dismissed the first witness, Efren's counsel informed the court that his next three witnesses were unavailable even though they had been subpoenaed to testify. Defense counsel requested a continuance to present the necessary witnesses.

Efren contends that the court's denial of his motion for a continuance deprived him of a reasonable opportunity to present a defense. However, Efren's counsel only stated that the first witness' testimony would go to the victim's credibility and that regarding that other witnesses, "[t]here is vital information that we would like to have these witnesses testify to." However, counsel also admitted "[w]e have had an extremely difficult time being in contact with one, in particular, so to state that I know what she could testify to would be untrue." Since Efren's counsel did not provide an offer of proof to establish what testimony counsel expected to elicit from the witnesses, Efren could not establish any prejudice from the court's denial of his request for a continuance. There is no abuse of discretion where a party cannot establish prejudice from the denial of a request for a continuance. See, *Veik v. The Tilden Bank*, 200 Neb. 705, 265 N.W.2d 214 (1978) (no abuse of discretion where district court denied defendant's motion to continue following defendant's objection to withdrawal of plaintiff's rest where defendant's objections were stated in general terms and stated no basis in fact as to how prejudice would arise if continuance was not granted); *Korte v. Betzer*, 193 Neb. 15, 225 N.W.2d 30 (1975) (district court's denial of plaintiff's motion for continuance not abuse of discretion where written motion was presented on morning of scheduled trial and plaintiff did not support motion by affidavit in evidence or testimony).

## VI. CONCLUSION

Having considered and rejected Efren's assigned errors, the order of the juvenile court is affirmed.

AFFIRMED.